JOHNSON *v.* CITY OF BAY CITY.

1. INFANTS—CONTRIBUTORY NEGLIGENCE—ELECTRICITY.
 An infant of five years and four months is not chargeable with contributory negligence for coming in contact with a live electric wire, broken and hanging in a public street.[1]

2. HIGHWAYS AND STREETS—TRESPASS—MUNICIPAL CORPORATIONS.
 In going upon an ornamental grass plat between the sidewalk and curb line of a street, and coming in contact with a broken electric wire hanging there, the infant plaintiff did not commit a trespass.

---

[1] As to liability for injuries by electric wires in highways, see note to *Denver Consolidated Elec. Co.* v. *Simpson* (Colo.), 31 L. R. A. 566.

3. SAME—INTERFERENCE WITH WIRES.

In the absence of testimony tending to show that plaintiff meddled with the wire, except the position and character of the injuries she received, she was not chargeable with a trespass for playing with it.

4. ELECTRICITY—MUNICIPAL CORPORATIONS — NEGLIGENCE — CONSTRUCTION OF LINE.

So constructing a line of electric wires carrying a current of about 2,200 volts, that limbs of adjacent trees come in contact with the wires and cause a short circuit and burn them off, cannot be said, as a matter of law, to constitute due care.

5. SAME—EXPERT EVIDENCE—SPECIAL QUESTION.

Although the jury found, in answer to a special question, that the wires did not come in contact with each other, the court cannot say, as a matter of law, that the limbs did not otherwise cause a short circuit in the wet weather shown by the testimony to have existed.

6. MUNICIPAL CORPORATIONS—DAMAGES—EXCESSIVENESS—AMOUNT CLAIMED—PRESENTMENT OF CLAIM.

Since the notice and statement of claim presented by the injured person to the municipality need not contain the amount of damages claimed, a statement in such claim fixing plaintiff's damages at $5,000 might be rejected as surplusage, and a verdict rendered for a larger amount.

7. DAMAGES—EVIDENCE—EXCESSIVE AWARD.

Under testimony that plaintiff, a child of about five years of age, was permanently injured by coming in contact with an electric wire, and lost two fingers and part of a third, sustaining other less serious burns, and a severe nervous shock, which might result in permanent nervousness, a verdict of $7,500 was not reversible as excessive. BROOKE and McALVAY, JJ., dissenting.

Error to Bay; Collins, J. Submitted December 1, 1910. (Docket No. 158.) Decided December 30, 1910.

Case by Ruth Johnson, by Christ Johnson, her next friend, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*S. G. Houghton,* for appellant.

*De Vere Hall* (*L. P. Coumans,* of counsel), for appellee.

Defendant operated an electric lighting plant, by means of which it furnished electricity for both public and private lighting. As a part of its equipment, it maintained a row of poles on South Raymond street in Bay City, upon which wires were strung, carrying an electric current of 2,200 volts. These poles on Raymond street were set between the sidewalk and the curb on that portion of the street designed to be used as a grass plat or lawn, for ornamental purposes. There were several large trees upon the same side of the street. The record shows that, while the wires were supported by an arm which extended from the pole towards the center of the street, yet they were so placed as to permit a branch or branches of one of the trees to come in contact with them. During the night of June 21–22, 1906, a severe storm, accompanied by wind, visited Bay City. While the storm was somewhat unusual in severity, it does not appear to have been such as might not reasonably have been expected to occur. On this night, the wires in question were burned off at a point where they passed through the branches of a tree, and one of the loose ends dropped down until it touched, or very nearly touched, the earth. Plaintiff lived in a house facing upon Raymond street, but a few feet distant from the hanging wire. She was, at that time, but five years and four months old. In some manner not shown by the record, she came in contact with the end of the broken wire and received through her body the electric current. Her left hand, with which she seems to have laid hold of the wire, was so severely burned that it was found necessary to amputate the first two fingers entirely, and the third finger at the second joint. This disability, together with an alleged nervousness, said to have been caused by the shock, constitutes the permanent injury for which plaintiff seeks compensation. The negligence relied upon by the plaintiff is set out in her declaration as follows:

"(1) In that it carelessly and negligently erected, constructed and maintained said electric lighting wires so that by usual winds or storms they would come and be

brought in contact with the limbs, branches and foliage, of trees situate near them.

"(2) Having erected, constructed and main ¬ined said electric lighting wires near to such trees and through their limbs, branches and foliage in that it carelessly and negligently failed and omitted to cut, trim and remove such limbs, branches and foliage so that by usual winds or storms the said wires would not come or be brought in contact therewith.

"(3) Having erected, constructed and maintained said electric lighting wires so near to such trees and so through their limbs, branches and foliage, and having failed and omitted to cut, trim and remove such limbs, branches and foliage so that by usual winds or storms the wires would not come or be brought in contact therewith, in that after the occurrence of such wind or storm on the night of June 21–22, 1906, it carelessly and negligently failed and omitted to examine and inspect the said wires to ascertain and discover whether they remained unbroken, in place and regularly and properly strung and attached to said poles.

"(4) Having erected, constructed and maintained said electric lighting wires so near to such trees and so through their limbs, branches and foliage and having failed and omitted to cut, trim and remove such limbs, branches and foliage so that by usual winds or storms the said wires would not come or be brought in contact therewith, in that after the occurrence of such wind or storm on the night of June 21–22, 1906, having examined and inspected the said wires and ascertained and discovered that they were broken, displaced and not regularly and properly strung and attached to said poles, it carelessly and negligently failed and omitted to repair the said wires before employing a current of electricity thereon.

"(5) Having knowledge and notice of the erection, construction and maintenance of said electric lighting wires so near to said trees and so through their limbs, branches and foliage and of the voltage of electricity carried thereby and of the failure and omission to cut, trim and remove such limbs, branches and foliage and that by usual winds or storms the said wires would come or be brought in contact therewith, thus forming such current and rendering said wires liable to burn, break and fall onto or near the ground in said street at or about the said sidewalk and line of persons lawfully employing the said street and

sidewalk, and thus come or be brought into contact with such persons passing along said street and sidewalk, thereby exposing them to serious injury or death, in that after the occurrence of such usual wind or storm on the night of June 21–22, 1906, it carelessly and negligently failed and omitted to turn off and withhold such current of electricity from said line of wires until the same had been examined and inspected, to ascertain and discover whether the said wires remained unbroken, in place and regularly and properly strung and attached to said poles."

Plaintiff recovered a judgment for $7,500, and defendant has removed the case to this court for review, by writ of error.

Brooke, J. (*after stating the facts*). The first assignment of error argued by defendant's counsel is that the court erred in charging the jury that plaintiff could not be guilty of contributory negligence, as a matter of law, and was not a trespasser. At the time of the injury plaintiff was five years and four months old. We are of opinion that an infant of this extremely tender age cannot be charged with contributory negligence. There comes a time in the life of every child, when the doing of an act which results in injury to itself may be said to be negligence, as a matter of law, and there is a period between that time and extreme youth when the question of whether or not the child had sufficient intelligence to appreciate the dangerous consequences liable to flow from its act becomes one for the jury. We believe, however, that all reasonable minds would agree that an infant, but little more than five years of age, could not have sufficient intelligence to be charged with negligence, either as a matter of law or as a matter of fact. It may be difficult, perhaps impossible, to point out the exact age at which the question becomes one for the jury, but it is, we think, clear that it has not arrived at five years and four months. *Richardson* v. *Nelson*, 221 Ill. 254 (77 N. E. 583); *Walbridge* v. *Railway Co.*, 190 Pa. St. 274 (42 Atl. 689); *Central Trust Co.* v. *Railway Co.* (C. C.), 31 Fed. 246;

*Rolin* v. *Tobacco Co.*, 141 N. C. 300 (53 S. E. 891, 7 L. R. A. [N. S.] 335); 29 Cyc. p. 533, and cases cited.

In going upon the ornamental grass plat, between the sidewalk and the curb line, plaintiff was not a trespasser. That ground is as much a part of the street as any other ground within its limits, and no citizen could be guilty of trespass in going upon or over it. We are not here considering the statutory duty of municipalities to keep their streets, etc., in a condition reasonably safe and fit for public travel. The plaintiff plants her right of action upon the alleged omission of the municipality to perform a common-law duty.

It is urged by defendant that in any event plaintiff was guilty of trespass in meddling or playing with the dangerous hanging wire, the property of the defendant. As pointed out in the statement of facts, the record does not show how plaintiff came in contact with the wire. A small burn on her head lends some color to the theory that she may first have touched it with her head, not having noticed it; that she then seized it with her hand to free herself from it. When first discovered by her mother, she was lying upon the ground, the wire having burned itself free from her hand. There is no testimony in the record, other than the fact of her injuries and their location upon her person, to show that she was "meddling" with the wire, as that term is ordinarily used. These facts, we think, serve to clearly distinguish the present case from *Iamurri* v. *Gas Co.*, 148 Mich. 27 (111 N. W. 884), and the cases therein cited. That case was very fully considered, and was affirmed by a divided court. In the case at bar, the question is not present, for there is no evidence of even a technical trespass.

It is next claimed by defendant that there is no evidence of negligence on the part of the defendant. The record shows conclusively that, at the point where the wires parted, they passed through the branches of a large tree; that one of the limbs, about an inch in diameter, was scored or burned where it came in contact with the wires;

that the insulation was entirely worn off of the wires at the points where they came in contact with the limb. It was the plaintiff's theory that, the insulation having been destroyed by abrasion against the limb, and the wires coming in contact with the limb at a time when it was very wet, the limb served to conduct the electricity from one wire to the other, thus forming a "short circuit" which would instantly cause the wires to burn off. Plaintiff does not claim that defendant was negligent in not seasonably replacing the wires after it had notice that they were down, but does claim that it was negligence to construct and maintain the line in such a manner as to permit the wires to come in contact with the branch in question. Three employés of defendant repaired these wires after the accident. Two of the three gave as their opinion that the wires burned off because of a "short circuit" caused by the limb. The third was of opinion that a wet green limb could not have acted as a conductor so as to have closed the circuit and so caused the wires to fuse. It was his claim that the wires could burn off only if they came into actual contact with each other, or with a wire which touched both. The record contains no other expert testimony upon this question. The learned circuit judge submitted both theories to the jury and they found for the plaintiff. We cannot say that they were not warranted in so finding, under the testimony. Nor can it be said, as a matter of law, that defendant was not negligent in the manner of its construction and maintenance of the wires in question. If the limb operated to "short circuit" the wires, either by itself conducting the current across the intervening space, or by its swaying motion it brought the wires together, thus causing them to burn off, we think the question of defendant's negligence became one of fact for the determination of the jury, and, as such, it was properly submitted.

Counsel for defendant contends that, as the jury found in answer to the special question, the wires did not come

in contact with each other, they must have found that the wet green limb coming in contact with the two bare wires caused the "short circuit," and this, he claims, is a scientific impossibility. In answer to this position, we can only say that it is the duty of this court to consider only the evidence we find in the record except matters of which the court may properly take judicial cognizance. The defendant, if correct in its theory, could have and should have, produced overwhelming evidence of its truth. Upon this record the weight of the evidence is against that theory.

A motion for a new trial was made and denied. Upon that motion it was urged that the verdict was excessive:

*First,* because plaintiff, in submitting her claim to defendant in compliance with the charter, had fixed her damages at $5,000. As to the excess of the verdict over this amount, defendant claims that it was never presented to it for audit and allowance as the charter requires. We think this position not tenable. We have held a notice of claim under a similar charter provision to be sufficient where no sum was set forth in the notice. *Oesterreich* v. *City of Detroit,* 137 Mich. 415 (100 N. W. 593). Where the claim is unliquidated and for a tort, the charter requirement is served when the notice sets out the facts upon which the claim rests, as required by the charter. In our opinion, the addition of the amount of the claim is mere surplusage. *Morgan* v. *City of Lewiston,* 91 Me. 566 (40 Atl. 545); *Burdick* v. *Richmond,* 16 R. I. 502 (17 Atl. 917); 2 Beach on Public Corporations, § 855.

*Second.* But the question still remains whether or not the verdict of $7,500 is excessive. We think that the judgment of a jury, supported by the findings of the trial judge in his denial of a new trial, should not be lightly interfered with, particularly where that judgment and finding fixes compensation for a permanent injury. The legislature has, however, seen fit to place the responsibility of finally determining the justice of the verdict and judgment upon this court, and, as was said in *Re McIntyre's*

*Estate*, 160 Mich. 117 (125 N. W. 51), we cannot escape that responsibility. A careful consideration of the injuries from which this unfortunate little girl is suffering and will continue to suffer during the remainder of her life, leads us to the conclusion that the verdict is excessive. She has lost two fingers and a part of a third and the palm of the same hand is badly scarred from the burn. Her mother gives testimony to the effect that, during thunder storms, she is nervous and excitable. Her attending physician testified that:

"So far as her nourishment is concerned and her general appearance of health for a child of eight years of age, I do not see anything especially abnormal."

Testifying as to her nervousness, he said:

"That it might produce a permanent nervousness; that is, for a number of years. Perhaps until the child is 15 or 16 years old. Then I would expect it to be somewhat better after she arrived at that age."

Such nervousness as the child now exhibits during a thunder storm is not very uncommon among children, or adults either, for that matter, and is, in our opinion, not a very serious matter.

The injury to the hand is, of course, serious and permanent, but, upon a careful review of the whole matter, we have concluded that unless plaintiff will remit all over $5,000, the judgment must be set aside and a new trial ordered. If she does so remit, it will stand affirmed.

McAlvay, J., concurred with Brooke, J.

Hooker, J. We are of the opinion the judgment should be affirmed.

Moore and Ostrander, JJ., concurred with Hooker, J.