BENO v. KLOKA.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INFANTS—EVIDENCE — TRIAL—INSTRUCTIONS.

In an action for personal injuries to a boy 5 years and 11 months of age, where the testimony as to the manner in which he was crossing the street at the time he was struck by defendants' automobile was in dispute, it was error for the court to instruct the jury that "he suddenly darted across the street."

2. SAME—EVIDENCE—INSTRUCTIONS.

Whether the driver was guilty of negligence in not using due caution, and in not having seen plaintiff before the collision, was a question of fact for the consideration of the jury, under proper instructions as to her duty to exercise reasonable care.

3. INFANTS—CONTRIBUTORY NEGLIGENCE—CAPACITY—PRESUMPTIONS.

An infant of 5 years and 11 months is not chargeable with contributory negligence in being struck by an auto-

mobile while crossing a street; the conclusive presumption of incapacity applying, not so much because the child is lacking in knowledge as because it is lacking in judgment and discretion.

Error to Wayne; Mandell (Henry A.), J. Submitted April 15, 1920. (Docket No. 82.) Decided July 20, 1920.

Case by William Beno, an infant, by his next friend, against Anthony J. Kloka and another for personal injuries. Judgment for defendants. Plaintiff brings error. Reversed.

*H. G. Lyle* and *Hugh C. Chedester,* for appellant.

*Kerr & Lacey,* for appellees.

STONE, J. This case has been brought here by the plaintiff on writ of error, to review a verdict and judgment for the defendants rendered in the Wayne circuit court. The action was for damages for personal injuries sustained by the infant plaintiff when hit by an automobile owned by defendant Kloka, and, with his knowledge and permission, being then driven by the defendant Olscewski, on St. Aubin avenue, Detroit, at about 10 o'clock in the forenoon of April 15, 1916. The plaintiff was at the time 5 years and 11 months of age. St. Aubin avenue runs north and south. In the block where plaintiff was injured, St. Aubin was crossed at the north side of the block by Maple street, and by Sherman street on the south side thereof. The plaintiff lived at the corner of St. Aubin and Sherman streets and upon the west side of St. Aubin avenue. He had been sent by his mother to a meat market on the opposite side of the avenue near Maple street to make a purchase, and at the time of the injury complained of, was returning home.

There was upon the trial no dispute as to the own-

ership of the automobile that hit the plaintiff, that it was being driven with the owner's consent, and that the driver failed to blow the horn or give other warning of her approach. The negligence complained of was failure to give warning, and a rate of speed exceeding 10 miles an hour. There was no evidence on the part of the plaintiff that the rate of speed exceeded 10 miles an hour. The defendant Olscewski (having married before the trial and then bearing the name of Cosgrove) testified that she "was not going very much more than 10 miles an hour, because I had thrown out my clutch and had my brake half down."

Both of the other witnesses for defendants testified that the rate of speed did not exceed 10 miles an hour. The plaintiff and the defendants presented different claims as to the manner of the injury; that of the plaintiff was that the boy, at the time the automobile approached, was standing in the middle of St. Aubin avenue, watching a truck go by, northwardly, and thus had his back to the automobile coming southerly; that he was then in a place of danger, and that it was the duty of the driver of the automobile to keep such lookout as to see him in such place of danger, and to warn him of her approach, by horn or otherwise, and that her failure to do so constituted negligence, and was the proximate cause of the injury.

Mrs. Viola Long, the only eyewitness sworn on behalf of the plaintiff, testified as follows:

"I went into the meat shop as he came out. He had meat in his arms. When I went in the door, why, I seen William stop about the middle of the street, and there was a truck coming, and he had to hurry pretty fast to get to the middle of the street before the truck came. He stood there with his face to the truck, until the truck had passed him, and when the truck passed I stood on the steps and watched the child until he started to go home, after the truck had

passed him. Then he turned his back to the machine that was coming around the corner; it came from the west and came east on Maple, and then he turned right around on St. Aubin to go south, so when he started to go home, he, instead of turning his face towards the machine as he came around, he turned his back, and he went kitty-corner across the street.

"Q. What happened then?

"A. Well, she came around the corner, and she didn't blow any horn; she didn't give no sign of any kind for the child to hear her; the car didn't make any noise because I didn't hear it myself. And then the boy didn't look back to see anything; when he didn't hear anything, and she struck him right across the hip. * * * When he came out of the store and started home, he went right straight into the street, from the store door. Then this truck was coming, and he walked out in the middle of the street. He was going directly towards home, in an angling direction. The truck was going north. He stepped out and the truck passed him. Then he turned around to go across, turned his face towards home, and away from the automobile."

The mother of the plaintiff testified that he was a bright, intelligent boy,—"a good smart little fellow"; that he had been instructed by her to "be careful when he saw an automobile," and that he was acquainted with the neighborhood.

The claim of the defendants was that the plaintiff ran suddenly across the street, in front of the automobile, and that the accident was unavoidable. On behalf of the defendants the two men in charge of the truck and the defendant driver of the automobile testified. The substance of the testimony of the two men was that just as they crossed Sherman street they saw the plaintiff standing on the east curb, about 60 feet ahead; that the truck was going about five miles an hour; that plaintiff "ran across, ran right on the bias, and ran right in front of the lady's automobile." The said defendant driver of the automobile testified as follows:

"First saw the truck just anead of me, on the opposite side; first saw the boy when he struck my car; he came from across the street; ran directly from the street across into my car; bumper on the left side struck him; he fell under the car; wheels did not touch him; I stopped, was then almost at a standstill; didn't go over a car length."

The case was submitted to the jury in a lengthy charge, and they returned a verdict for the defendants, and a judgment was entered accordingly. A motion for a new trial was denied. No exceptions were filed to the denial, and hence the only assignments of error that can be considered are those relating to the charge of the court. The first two assignments of error are too general to merit attention. There were no requests to charge.

The third assignment of error complains of the following portion of the charge:

"There is no question but that this child stood at or near the curb on St. Aubin avenue, and that he suddenly darted across the street. * * * Should the driver of the machine have anticipated, that is, using that degree of care and caution that an ordinarily prudent person would have exercised under the circumstances, would she have anticipated that this child would run across the street in front of her vehicle."

The first part of the charge here complained of was reiterated in the following language:

"Now there can be no doubt that in this case that this child did rush across that street without judging of the circumstances."

We are of the opinion that under the evidence it became a question of fact as to the manner in which the plaintiff crossed the street, and that the court should not have charged that "he suddenly darted across the street." Whether the driver was guilty of negligence in not using due caution, and in not

having seen the plaintiff before the collision, was a question of fact for the consideration of the jury, under proper instructions as to her duty to exercise reasonable care. What we have here said is applicable to the fourth assignment of error. The remaining assignments of error relate to that part of the charge dealing with the subject of contributory negligence. We quote that part of the charge, and the parts objected to are contained in parentheses:

"I now come to a question that is one of more or less delicacy, and that is the question of contributory negligence. If a man is going to cross a place of danger, and all our streets today by reason of the peculiar traffic thereon are places of danger, that man is expected to behave and conduct himself as an ordinarily prudent person would under the circumstances. Now, the rule is different when we come to children. Children of this age, or the age that this child is shown to have been at the time of the injury, are not expected in law or in common sense—the law and common sense are exactly the same in most instances—to have prudence, to have appreciation of dangers, and therefore, the rule is very different. Now, our higher court has determined in certain cases where children of tender years have been injured that they are not chargeable with any prudence whatsoever, that they are expected, because of their very tender years, to act from impulse rather than act always in the exercise of common sense and thought, or as the result of prudent and careful thought. So very delicate children are excused in all cases from the exercise of prudence and care. Now, other cases that we have determined that in any case children are expected to exercise that degree of care and prudence and thoughtfulness that children of that particular age would be expected to have and to exercise. Now, this case that is before us is a case that is just about halfway between. (I cannot charge you, I believe, in this case, that this child was not chargeable with the duty of exercising prudence and diligence), nor can I charge you that it was expected to exercise prudence and care. (Now, there can be no doubt that in this case

this child did rush across that street without judging of the circumstances;) if it had, it would have looked both ways; it would have seen the danger and perhaps have prevented it, but if the child was of such tender years that it would not be expected to exercise judgment and care, then it is not chargeable with the duty of exercising care in what it did. I charge and instruct you as a matter of law that you should consider all the testimony concerning this child, the question of whether it had intelligence, the question of how much intelligence the proofs here show that it had, and then charge that child with the duty of exercising the amount of care and diligence and prudence that a child of its years and its understanding would be expected under the circumstances to exercise. And if you find that it was not expected to exercise any, then you cannot charge it with contributory negligence, but you can charge it merely with the duty of exercising the amount of care that a child of such tender years would under the circumstances be expected to exercise. Now, that is a broad subject, therefore, that I am leaving as a disputed matter of fact to you. (You will have to determine in the case, not as a matter of law, but as a matter of fact, whether this child was chargeable with any act of contributory negligence.)"

We are of the opinion that it was reversible error for the trial court to submit to the jury in any way the question of contributory negligence of the plaintiff. He was 5 years and 11 months of age. We think the instant case is governed by the rule stated by this court in *Johnson* v. *City of Bay City*, 164 Mich. 251 (Ann. Cas. 1912B, 866), and in *Love* v. *Railroad Co.*, 170 Mich. 1.

In the *Johnson Case*, Justice Brooke, speaking for the court, said:

"At the time of the injury plaintiff was five years and four months old. We are of opinion that an infant of this extremely tender age cannot be charged with contributory negligence. There comes a time in the life of every child, when the doing of an act which results in injury to itself may be said to be negligence, as a matter of law, and there is a period

between that time and extreme youth when the question of whether or not the child had sufficient intelligence to appreciate the dangerous consequences liable to flow from its act, becomes one for the jury. We believe, however, that all reasonable minds would agree that an infant, but little more than five years of age, could not have sufficient intelligence to be charged with negligence, either as a matter of law or as a matter of fact. It may be difficult, perhaps impossible, to point out the exact age at which the question becomes one for the jury, but it is, we think, clear that it has not arrived at five years and four months." See cases cited.

In the *Love Case,* deceased, at the time of the injury, was five years and five months of age, and we held that a child of such tender years could not be charged with contributory negligence.

In an exhaustive annotation on the subject of contributory negligence of children in L. R. A. 1917F, at p. 57, it is said:

"In cases of injury to children between five and six years of age, the correct rule would seem to be that the doctrine of conclusive presumption of incapacity should apply. This is true, not so much because the child is lacking in knowledge as because it is lacking in judgment and discretion."

For these errors in the charge, the judgment of the circuit court is reversed and a new trial granted, with costs to the appellant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, and BIRD, JJ., concurred. CLARK and SHARPE, JJ., did not sit.