RUFNER v. CITY OF TRAVERSE CITY.

1. Appeal and Error—Trial Court's Reasons for a Decision.
    If the trial court comes to the right conclusion and renders a just and legal decision, it matters not what reasons were given therefor.

2. Municipal Corporations—Governmental Function—Statutes—Duty to Maintain Streets in a Reasonably Safe Condition.
    Such immunity from liability as city may have had in the maintenance of electric light poles for street-lighting purposes because pole may have been employed in a governmental function was removed by statute requiring city to maintain its streets in a reasonably safe condition for public travel, hence city was liable for death of boy who was struck by pole which fell because of rotten condition.

3. Same—Rotten Pole Between Sidewalk and Curb.
    A city which maintained a pole between the sidewalk and curb for street-lighting purposes was liable for death of boy who

received fatal injuries when rotten pole fell over, where pole had not been inspected for a number of years, if ever (1 Comp. Laws 1929, § 4225).

4. DEATH—DOCTOR, HOSPITAL, AND FUNERAL BILLS—RECOVERY BY PERSONAL REPRESENTATIVE—MINORS.

Doctor, hospital and funeral bills for a minor child are recoverable in action by administrator of his estate notwithstanding father is legally liable for such items of expense as by such death he has suffered a pecuniary injury and statute requires that actions for wrongful death were to be brought only thereunder and permits recovery by personal representative for such items (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

5. SAME—STATUTES—DOCTOR, HOSPITAL, AND FUNERAL BILLS OF DECEDENT MINOR.

Doctor, hospital, and funeral bills incident to fatal injuries received by plaintiff's minor decedent were items of damages for which court or jury was authorized by death act to allow recovery (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

6. APPEAL AND ERROR—DAMAGES—EVIDENCE.

The determination of damages for a wrongful death will not be disturbed on appeal if reasonably within the range of the testimony (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

7. DEATH—DAMAGES—MINORS.

Verdict of $2,500 in addition to doctor, hospital, and funeral expenses of $364.95 for death of 13-year-old boy earning about $3 a week while going to school *held*, not excessive in action under death act for fatal injuries which rendered him unconscious and from which he died about an hour and a half later (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

BOYLES and WIEST, JJ., dissenting.

Appeal from Grand Traverse; Gilbert (Parm C.), J. Submitted October 22, 1940. (Docket No. 132, Calendar No. 41,345.) Decided January 6, 1941.

Case by Oscar Rufner, administrator of the estate of Richard Rufner, deceased, against City of

Traverse City, a municipal corporation, for damages for personal injuries causing death of plaintiff's decedent as the result of being struck by a falling telephone pole. Verdict and judgment for plaintiff. Affirmed.

*Robert B. Murchie,* for plaintiff.

*Charles L. Menmuir,* for defendant.

Sharpe, C. J. This is an action for damages growing out of the death of a 13-year-old boy. The material facts are not in dispute. The city of Traverse City owns and operates a municipal light and power plant which furnishes electricity to its inhabitants and power for street lighting. About 9:30 p.m., on October 31, 1939, Richard Rufner was walking near the intersection of Sixth and Maple streets in said city. While he was on the crosswalk, a street light pole owned by the city and located on the southeast corner of the intersection within the highway limits in the grass plat between the street curb and sidewalk fell and struck him, rendering him unconscious, from which injuries he died approximately one and a half hours later. Subsequent inspection disclosed that the pole had become rotted near the ground level so that only about two inches of solid wood remained. The pole was 30 to 35 feet long and from about 10 to 12 inches in diameter. It had been erected approximately 20 years prior to the death of Richard Rufner, but no records were obtainable of its ever having been inspected by the city prior to the mentioned accident.

Richard Rufner was to have continued in school until he finished high school. He earned about $3 per week while going to school and it cost about this

sum to feed, clothe and care for him. He was allowed to keep about $1 of his earnings for spending money.

Plaintiff, as administrator of the estate of Richard Rufner, deceased, began suit and the declaration as filed contained two counts: First, that the city operated the light plant as a private enterprise and that a pole negligently maintained in connection with this enterprise fell, resulting in Richard Rufner's death; second, that the pole in question constituted a highway defect for which the city was liable under 1 Comp. Laws 1929, § 4225 (Stat. Ann. § 9.593). Prior to the trial of the case, plaintiff stated in court that he relied solely upon the second count in the declaration. The cause came on for trial before a jury, and at the close of plaintiff's case, defendant made a motion for a directed verdict on the grounds that street lighting was a governmental function, therefore, there was no liability; and that the highway statute did not apply. This motion was denied. The jury rendered a verdict in the sum of $3,570. Upon motion, the sum of $364.95, representing the funeral and medical bills which by consent had not been presented to the jury for its consideration, was added to the judgment. By remittitur filed by plaintiff, at the suggestion of the trial court, the judgment was reduced to $2,864.95, being $2,500 plus the funeral and medical bills.

Defendant appeals and contends that the trial court was in error in denying defendant's motion for a new trial and holding that street lighting was a proprietary, corporate function and not a governmental function of the defendant city. We have in mind that the above holding was made upon defendant's motion for a new trial. We do not understand nor does the record show that such a question was before the jury for its consideration.

The trial court instructed the jury as follows:

"The statute* of this State requires certain things relative to a highway such as this public street:

" 'Any person or persons sustaining bodily injury upon any of the public highways or streets in this State by reason of neglect to keep such public highways or streets and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action—' and so on.

"Now, that section means just what it says: That it is the duty of the city to keep its streets in a reasonably safe condition for travel. It doesn't mean it guarantees that no one will get hurt; it doesn't mean anyone is insured against all and every injury; but it means there should be a reasonable safety always present at any such location."

We have heretofore said that if the trial court comes to the right conclusion and renders a just and legal decision, it matters not what reasons were given for such a decision. In our opinion the pivotal question involved in this case is, Even though the city was performing a governmental function in lighting its streets, would not the common-law doctrine of municipal immunity have to yield to the specific statutory liability imposed on the defendant for failure to maintain its streets in a condition reasonably safe and fit for travel?

Plaintiff urges that even though the street light pole in question was being used in the performance of a governmental function, yet it constituted a high-

---

* 1 Comp. Laws 1929, § 4223 (Stat. Ann. § 9.591).—Reporter.

way defect within the meaning of 1 Comp. Laws 1929, § 4225 (Stat. Ann. § 9.593), which reads in part as follows:

"It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all public highways, streets, bridges, sidewalks, crosswalks, and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel."

Assuming that the city in erecting and maintaining the pole in question was employed in a governmental function, it is our opinion that the above highway statute removed the immunity of the city from liability. The reason that a city was not liable at common law for injuries caused by defective highways was because the duty to repair was a public one, and thus, since the city in the management and control of its highways was acting in a governmental capacity, it was immune from liability. *City of Detroit* v. *Blackeby,* 21 Mich. 84 (4 Am. Rep. 450); *Roberts* v. *City of Detroit,* 102 Mich. 64 (27 L. R. A. 572). In effect the above statute removes the exemption from liability and declares that the city must keep its highways reasonably safe for travel.

In *Jablonski* v. *City of Bay City,* 248 Mich. 306, we said:

"On motion to dismiss, in the nature of demurrer, the court held that the declaration did not state a cause of action, as the city had provided a safe place for pedestrians to walk and the wire was not such a defect in the street as rendered it unsafe for travel.

"The liability of a city for injuries caused by defects in its streets is purely statutory. The statute, 1 Comp. Laws 1915, § 4584 *et seq.,*[*] predicates such

---

[*] 1 Comp. Laws 1929, § 4223 *et seq.* (Stat. Ann. § 9.591 *et seq.*).— Reporter.

liability on the failure of the city to keep its streets 'in reasonable repair, and in condition reasonably safe and fit for travel.'

"This does not require that all parts of a country road, even within corporate limits, shall be prepared for travel. *Keyes* v. *Village of Marcellus,* 50 Mich. 439 (45 Am. Rep. 52). And it undoubtedly is the right of a city to determine, in its discretion and beyond judicial review, what part of a nominal highway shall be devoted to the various purposes of travel, to locate the road for vehicular traffic, and the portions for sidewalks, gutters, parkways, and other suitable uses. *McArthur* v. *City of Saginaw,* 58 Mich. 357 (55 Am. Rep. 687).

"But the city cannot lawfully, by the mere provision of suitable passageways for pedestrians, maintain dangerous and unreasonable obstructions or conditions in the street at places where people may reasonably be expected to go. It has the duty, in a well-traveled district, to keep the whole highway reasonably safe for travel. *Lincoln* v. *City of Detroit,* 101 Mich. 245. It cannot confine its citizens in a traffic groove. It must take into account the natural inclination of children to run about in play and the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path. Such departure from the sidewalk is not negligence *per se* in the individual, nor does it relieve the city of the duty to keep its streets in proper condition for travel at the places where people may reasonably be expected probably to walk. *Lincoln* v. *City of Detroit, supra; Baker* v. *City of Grand Rapids,* 111 Mich. 447; *Finch* v. *Village of Bangor,* 133 Mich. 149. In all of these cases pedestrians were injured when off the side or crosswalks.

"There is nothing in the declaration which indicates that plaintiff did not have the right to cross the parkway. In *Johnson* v. *City of Bay City,* 164 Mich. 251 (Ann. Cas. 1912B, 866), the court said:

" 'In going upon the ornamental grass plat, between the sidewalk and the curb line, plaintiff was not a trespasser. That ground is as much a part of the street as any other ground within its limits, and no citizen could be guilty of trespass in going upon or over it.'

"The language in *Miller* v. *City of Detroit,* 156 Mich. 630 (132 Am. St. Rep. 537, 16 Ann. Cas. 832), that the statutory duty of the city extends only to the 'physical highway,' does not mean that the city is liable only for defects in the bed of the road. In that case it was recognized that the duty exists to remove dangerous obstructions from a highway upon the theory that they constitute defects in the surface. A pile of sheet steel resting on edge on the sidewalk in a manner dangerous to pedestrians is an actionable defect in the walk. *Brown* v. *City of St. Johns,* 187 Mich. 641. A wire strung dangerously across a walk or wherever it may reasonably be expected that pedestrians would travel would be such a defect because the street then would not be in a condition reasonably safe and fit for travel."

In the case at bar the pole was located between the sidewalk and the curb. It had not been inspected for a number of years, if ever. It stood there apparently safe and useful, but in fact poised as a menace and a danger to anyone passing that way. Under such circumstances the city was liable for any danger caused by its fall.

Defendant urges that the trial court erred in allowing plaintiff to recover the amount of the doctor, hospital and funeral bills of plaintiff's decedent in view of the provisions of 3 Comp. Laws 1929, § 14062, as amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14062, Stat. Ann. 1940 Cum. Supp. § 27.712). The section reads as follows:

"Every such action shall be brought by, and in the names of, the personal representatives of such

deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death.''

We cannot subscribe to defendant's theory that such items of expense cannot be recovered unless the estate is liable for them. The first section of the above mentioned act* provides that: ''All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.'' In the case of the death of a minor child, the father is legally liable for such items of expense and by reason of such wrongful death has suffered a pecuniary injury. We find nothing in the statute to indicate that the legislature intended in such cases that the loss would not be recoverable.

The statute provides that damages may be given for pecuniary injury resulting from such death to those persons who may be entitled thereto. In *Edgerton* v. *Lynch,* 255 Mich. 456, we held that funeral expenses were a pecuniary injury, and in our opinion doctor and hospital bills are also a pecuniary injury. Inasmuch as the statute provides that there can be but one action, we hold that the mentioned damages are included therein.

---

* See 3 Comp. Laws 1929, § 14061, as amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14061, Stat. Ann. 1940 Cum. Supp. § 27.711).—REPORTER.

It is next urged that the verdict as remitted is grossly excessive. The resulting damages in this case are prospective and difficult of exact ascertainment. *Oakes* v. *Van Zomeren,* 255 Mich. 372. The determination of such damages will not be disturbed on appeal if reasonably within the range of the testimony. *Kinsler* v. *Simpson,* 257 Mich. 7. In the case at bar the testimony is conflicting as to the prospective earning power of the deceased, but the amount of damages allowed is not outside of the range of the testimony and should not be disturbed.

The judgment is affirmed, with costs to plaintiff.

BUSHNELL, CHANDLER, NORTH, McALLISTER, and BUTZEL, JJ., concurred with SHARPE, C. J.

BOYLES, J. (*dissenting*). In this case, the city furnished electrical energy in a dual capacity—(1) for commercial purposes; (2) for municipal street lighting. The pole in question was used exclusively for street lighting. It carried only the wires to and from a street light. The current it carried was different from that used for commercial purposes. This case is controlled by *Hodgins* v. *Bay City,* 156 Mich. 687, 692 (132 Am. St. Rep. 546), where we said:

"We are therefore of the opinion that the municipality, in furnishing electric light, is discharged from liability for the negligence of its officers, agents, and employees when furnishing the service for lighting its public streets, public places, and buildings, and that it is liable for such negligence in furnishing light to its inhabitants for remuneration."

See, also, 6 McQuillin, Municipal Corporations (2d Rev. Ed.), § 2816; *Royston* v. *City of Charlotte,* 278 Mich. 255.

The highway statute relied upon by plaintiff does not apply to this case. *Butler* v. *City of Grand Rapids*, 273 Mich. 674.

Judgment should be reversed without a new trial, with costs to defendant.

WIEST, J., concurred with BOYLES, J.