MORRIS *v.* RADLEY.

1. AUTOMOBILES—CHILDREN—NEGLIGENCE—QUESTION OF FACT.

In action by administratrix of estate of child approximately 4 years and 10 months old when almost instantly killed by defendant's car, evidence showing that child was crossing country road from north to south, that for 200 feet westbound motorist, proceeding at 45 to 50 miles an hour at 4:30 on a summer afternoon, had a clear, unobstructed view of driveway from which the child had come but that he had not seen the child until within 50 feet of her and that she ran into side of truck when he was on south part of road to which he had swerved after having met and passed an eastbound car presented a question of fact as to whether motorist was guilty of negligence as he was not confronted by a sudden emergency of a child darting into road.

2. SAME—YOUNG CHILDREN—CONTRIBUTORY NEGLIGENCE.

Child under five years of age who was bright and had permission from her grandparents to cross country road and visit little girls on other side of road was properly held not guilty of contributory negligence as a matter of law in action against motorist.

3. DEATH—DAMAGES—INSTRUCTIONS—YOUNG CHILD.

In action for loss of young child under death act as amended, instruction to jury that if it found for plaintiff it should allow any medical, hospital and funeral or burial expense if estate was liable for any such, deceased's future earnings and contributions to parents until 21 less reasonable expense of maintenance was proper (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

4. TRIAL—LANGUAGE OF INSTRUCTIONS—REQUESTS TO CHARGE.

The trial court is not required to use the language asked for by counsel in requests to charge if the jury is correctly and adequately informed.

5. DEATH—DAMAGES—INSTRUCTIONS—EVIDENCE.

In action under death act as amended, for loss of child nearly 4 years and 10 months old, resulting in verdict and judgment of $2,539.50, record held, not to disclose error in instructions and testimony received on matter of damages, nor was verdict excessive (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

6. APPEAL AND ERROR—CIRCUIT COURT—JURISDICTION—NEW TRIAL—AMENDMENT OF PLEADING.

Motion for new trial and for leave to amend answer in an action at law so as to interpose defense of governmental immunity on behalf of a county road commission, filed after claim of appeal had been filed, was properly denied by circuit court as the circuit court no longer had jurisdiction of such motion after appeal to the Supreme Court had been perfected in the absence of request to Supreme Court to remand case (Court Rule No. 56, § 1 [1933])

7. SAME—SAVING QUESTIONS FOR REVIEW—SUPREME COURT.

Fact that ordinarily the Supreme Court will examine only points relied upon for reversal of a case that have been properly preserved at the trial does not limit the power of the Supreme Court to prevent fundamental injustice.

8. SAME—AMENDMENTS—SUPREME COURT.

The Supreme Court may exercise any of the powers of amendment of the court below and make any order, or grant such relief, as the case may require (Court Rule No. 72 [1933]).

9. SAME—AUTOMOBILES—NEGLIGENCE—GOVERNMENTAL IMMUNITY.

In action against county road commission and its employee who killed plaintiff's decedent while operating commission's truck en route from place where he had done some work, judgment against commission which had been entered by trial court after decision had been rendered in *Miller* v. *Manistee County Board of Road Commissioners*, 297 Mich. 487, and before it had been expressly overruled by a subsequent case, is reversed because of governmental immunity and verdict against negligent employee, not having been materially influenced by presence of commission in the case, is allowed to stand (Court Rule No. 72 [1933]).

10. DEATH—DAMAGES—OPINIONS AS TO PECUNIARY LOSS—STATUTES.

In action under death act as amended for loss of child nearly 4 years and 10 months old, opinion testimony of parents of several children who had passed their majority as to the pecuniary value of the child's services to her parents until majority, over and above the expense of her care, education and support, was admissible since the witnesses were qualified and the act provides for recovery of damages based upon the pecuniary injury resulting from such death (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

11. DAMAGES—PECUNIARY INJURY—OPINION EVIDENCE.

Under statute permitting recovery for pecuniary injury, opinion testimony by qualified witnesses is admissible to aid jury in arriving at just conclusion (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

12. DEATH—EXEMPLARY DAMAGES.

No exemplary damages are allowed under the death act as amended (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

13. SAME—DAMAGES—INFANTS—EVIDENCE—REQUEST TO CHARGE—VERDICTS.

In action under death act as amended for death of girl nearly 4 years and 10 months old, admission of testimony of child's mother as to amount of wages received by herself and other

women in defense plants in city some 200 miles distant will not be ground for reversal where, although received over objection, no request was made to charge as to temporary nature of present earnings in defense plants and verdict rendered is within reasonable probability (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

14. SAME—DAMAGES—EVIDENCE—LOSS   TO   PARENTS—EXCESSIVE VERDICTS.

Verdict allowing approximately $2,100 for pecuniary loss suffered by parents, aside from burial and other expenses, because of death of daughter nearly 4 years and 10 months of age *held*, not excessive because of testimony as to wages paid women in defense plants in city about 200 miles distant (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939).

CHANDLER and WIEST, JJ., dissenting.

Appeal from Oceana; Arch (Charles O.), J., presiding. Submitted June 11, 1943. (Docket No. 65, Calendar No. 42,368.) Decided October 11, 1943.

Case by Ellen Mary Morris, special administratrix of the estate of Jean Morris, deceased, against Edward Radley and Oceana County Board of Road Commissioners for damages caused by negligent death. Verdict and judgment for plaintiff. Defendants appeal. Affirmed as to defendant Radley, reversed as to defendant Oceana County Board of Road Commissioners.

*J. Donald Murphy, Wm. J. Branstrom* and *Rottman & Siegel,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

BOYLES, C. J.   This is an action brought by the personal representative of the estate of one Jean

Morris, deceased, a child of the age of 4 years, 9 months and 28 days at the time of her death, to recover for the pecuniary loss suffered by her parents by reason of the accident that caused her death. The action is brought pursuant to the provisions of the present death act, 3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 14061, 14062, Stat. Ann. 1942 Cum. Supp. §§ 27.711, 27.712). Trial by jury resulted in verdict and judgment of $2,539.50 for plaintiff, from which defendants appeal.

On August 25, 1941, the child was living with her grandparents, the Gruettes, at their farm located on the north side of the Walkerville road about five miles outside of the village of Hart. The Walkerville road runs in an easterly and westerly direction, is a hard surfaced black top road of about 20 feet in width. It is a heavily traveled highway. On this particular day, the defendant Edward Radley, an employee of the Oceana county road commission, had driven a pickup truck owned by the latter to do some work on the highway. About 4:30 in the afternoon, he was driving back in a westerly direction on this Walkerville road towards Hart; as he approached the Gruette's driveway he was traveling about 45 to 50 miles per hour. He had a clear and unobstructed view of the driveway for a distance variously testified to by different witnesses from 200 feet to an eighth of a mile. As he came over the crest of a hill, variously testified to as being from 70 feet to more than 200 feet from the driveway, Radley saw a car coming toward him about opposite the driveway, on its own (south) side of the road. They passed, each on his own side of the road, and Radley says that about this time he saw the child running

across the road in front of the Gruette driveway. Defendant Radley's testimony is conflicting, and not in harmony, as to distances and as to what then occurred. He first testified he had a clear, unobstructed view of the driveway 200 feet; that he first saw the child when she was in the road, about 200' feet from the Gruette driveway; later, he testified he first saw the child 50 feet east of the driveway as he was meeting the other car, that he first saw the child "about in the middle of the center of the road," "about 44 feet away from my car," that he did not see the child until within 50 feet of her. He testified:

"*A.* I didn't see her until she was about in the center of the road.

"*Q.* Where were you looking, Mr. Radley?

"*A.* I think it was just about that time I was meeting this other car and I guess I must have been watching that. * * *

"*Q.* Then you were looking down the road?

"*A.* Yes, sir.

"*Q.* But you never saw this litle girl?

"*A.* Not until I was within 50 feet of her.

"*Q.* She was there to be seen if you had looked, wasn't she?

"*A.* She must have been there."

Again, later on, Radley testified he saw the child:

"When she was about half way to the center of the road. * * *

"*Q.* You have indicated that you saw the girl when she was about half way to the center of the road? She was then in the driveway?

"*A.* Yes, sir.

"*Q.* Was she running then?

"*A.* Yes, sir."

Radley testified he swerved his truck to the left —the south part of the road— and that the child ran

into the side of his truck. He did not try to stop, apply his brakes, or blow his horn. Again, he later testified:

"*Q.* You testified that when you first saw her she seemed to be running in a southeasterly direction?

"*A.* Yes, sir. Just while the car crossed the road.

"*Q.* If she was five feet in from the bank and was coming toward you she was coming in a diagonal direction, was she not?

"*A.* She was running toward the other driveway, which was —

"*Q.* She actually traveled more than five feet, didn't she?

"*A.* Maybe she did.

"*Q.* Did she, or didn't she?

"*A.* I don't know.

"*Q.* Did you see her at all, Mr. Radley?

"*A.* I saw her at the edge of the road.

"*Q.* And she was coming south, you say?

"*A.* Yes, sir."

The child was almost instantly killed by the accident. Radley's own testimony sufficiently indicated that there was a question of fact to be submitted to the jury as to whether he was guilty of negligence. If he could have seen the child when he was far enough away to stop and made no attempt to do so, or give warning of his approach, he was guilty of negligence. If the child was *in the center* of the road, midway between the north and south lanes, running south across the pavement when Radley first saw her, even at 50 feet distance, he could have continued through on his own (north) lane, or swerved to the shoulder on the right, without striking the child. If, as he says, he swerved to his left, into the south lane, he was on the wrong side of the road when his truck sideswiped the child after she had reached a place of safety from his westbound

truck. There was no occasion for him to watch the other car passing—it was on its own side. This is not a "sudden darting" case, where the driver is confronted with the sudden emergency of a child darting into the road. Radley, had he been reasonably alert and observant, probably might have prevented the accident. In view of his own testimony, the court did not err in submitting to the jury the question of fact as to whether Radley was guilty of negligence.

Defendants claim the court erred in refusing to submit to the jury the question whether the child was guilty of contributory negligence, as a matter of fact. The court charged the jury that the child was not guilty of contributory negligence, as a matter of law. She was under five years of age, had never attended school, was bright, had permission from her grandparents to cross the road and visit some little girls on the other side. The court did not err in refusing to submit the issue of contributory negligence to the jury. *Johnson* v. *City of Bay City,* 164 Mich. 251 (Ann. Cas. 1912 B, 866); *Love* v. *Railroad Co.,* 170 Mich. 1; *Beno* v. *Kloka,* 211 Mich. 116. In *Easton* v. *Medema,* 246 Mich. 130, this court had under consideration whether a child under seven years of age could be guilty of contributory negligence. The result was an equally divided court. Defendants, in claiming the court should have submitted the question of contributory negligence to the jury, now rely on *Tyler* v. *Weed,* 285 Mich. 460. In that case, this court considered the claim that a child under seven years of age was conclusively presumed to be incapable of contributory negligence, as a matter of law. After citing and discussing many decisions, this court declined to adhere to the common-law rule that children under seven years of age could not under any circumstances be guilty of contributory negligence, as a

matter of fact.   Applying the rule of age, intelligence, experience, judgment and ability laid down in the *Tyler Case*, the court in the case at bar did not err in instructing the jury that the child was not guilty of contributory negligence.   While the statement in *Colvaruso's Guardian* v. *Stroh Brewery Co.*, 301 Mich. 245, was dictum because the point was not necessary to decision, the opinion does state that a boy three days less than four years old cannot be guilty of contributory negligence.

Defendants also seek reversal on the ground that the court failed to give certain of defendants' requests to charge relating to the elements of damages.   The court correctly charged the jury that if it found for plaintiff, it should allow any medical, hospital and funeral or burial expense if the estate was found liable for any such, and allow deceased's future earnings and contributions to her parents until her twenty-first birthday, deducting the reasonable expense that would have been incurred by the parents for the child's maintenance during that period.   Present worth of future earnings of the deceased was correctly defined.   While the charge in these respects might have been amplified, as requested by defendants, the elements of damages were covered in the charge.   The trial court is not required to use the language asked for by counsel in requests to charge if the jury is correctly and adequately informed.   We find no reversible error in the charge or in receiving testimony as to damages.   It must be admitted that in cases of this nature, there is no precise yardstick with which damages can be measured.   Nor can we say that the verdict was excessive under the record in the case.

Defendant Radley was an employee of defendant board of county road commissioners of Oceana

county at the time of the accident. The truck was owned by the road commission, and being operated on the public highways by the county employee in the performance of his work for the county. The case was tried, and the judgment entered on June 6, 1942, at which time this court had decided that the defense of governmental immunity was not available to the defendant county road commission. *Miller* v. *Manistee County Board of Road Commissioners,* 297 Mich. 487 (136 A. L. R. 575). For that reason, the defendant county road commission did not interpose this defense in the pleadings or at the trial. On July 22, 1942, defendants filed their claim of appeal. On October 21, 1942, this court reversed its decision in the Manistee county road commission case, and held that the defense of governmental immunity was a defense to the claim of governmental liability. *Mead* v. *Michigan Public Service Commission,* 303 Mich. 168. Had this been the decision of the court at the time of trial in the case at bar, the defendant board of county road commissioners of Oceana county would have been entitled to a directed verdict, or for judgment *non obstante veredicto* after the conclusion. On November 2, 1942, counsel for the defendant road commission filed in the court below a motion for new trial and for leave to amend the answer, to interpose the defense of governmental immunity on behalf of the county road commission. The circuit judge properly denied the motion, for the obvious reason that the circuit court no longer had jurisdiction of a motion for new trial and motion to amend the answer, after appeal to this court had been perfected. Court Rule No. 56, § 1 (1933). Defendant had not asked this court to remand to the lower court.

Counsel for defendants now ask this court to consider the matter and allow the county road com-

mission to interpose the defense, in order to prevent
a miscarriage of justice. We concede this should
be allowed. The judgment against the defendant
county road commission in fairness should be set
aside, notwithstanding the failure of defendant to
raise the defense at the trial due to the circum-
stances related.

In a recent case, *People* v. *Holmes,* 292 Mich. 212,
we said:

"It is axiomatic that an objection not properly
and timely presented to the court below will be ig-
nored on review and, except under unusual circum-
stances, we have no disposition to relax this rule.
Nevertheless, in the exercise of supervisory control
over all litigation, appellate courts have long as-
serted the right to consider manifest and serious
errors although objection was not made by the party
who appeals. As stated in *Gonzales* v. *Rivera,* 37
N. M. 562, 568 (25 Pac. [2d] 802):

" 'Ordinarily this court is content to examine the
points here relied upon for reversal, if properly
preserved at the trial, sustaining or overruling
them. That is all appellants are entitled to as of
right. But that does not limit the inherent power
of this court to prevent fundamental injustice.' "

In *People* v. *Steeneck,* 247 Mich. 583, we also said:.

"The search warrant did not command the offi-
cer to search the premises of the defendant in the
nighttime, and the search made thereunder was not
warranted. *People* v. *Snyder,* 245 Mich. 1. (It is
but fair to state that this case was tried on the day
following that on which the above case was de-
cided.) The evidence secured thereby should not
have been received, and it cannot be said that it
was not prejudicial to the defendant. While no
objection was made to its reception for this rea-
son, and both court and counsel may well be ex-

cused for their failure to anticipate our holding in the *Snyder Case,* yet, in view of its prejudicial effect and the omission in the charge above pointed out (see *People* v. *Hill,* 236 Mich. 672), a new trial should be granted."

We see no persuasive reason why this salutary rule should not apply equally to a civil case under the present circumstances. This court may exercise any of the powers of amendment of the court below and make any order, or grant such relief, as the case may require. Court Rule No. 72 (1933). We would be remiss in doing justice, were we to allow the judgment against the county road commission to stand, while we have jurisdiction over the case on appeal. At the same time, we are not persuaded that the verdict against defendant Radley was materially influenced by the presence of the road commission as a defendant in the case.

Defendants also claim error on admission of testimony and that the verdict was excessive. Two witnesses, the parents of several children who had passed their majority, were permitted to testify as to the pecuniary value of the child's services to her parents until she arrived at majority, over and above the expense of her care, education and support. These witnesses were qualified as to their experience and knowledge. Their opinions were admissible. The statute under which the present action was brought (3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939), provides in part:

"In every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death."

In *Rajnowski* v. *Railroad Co.,* 74 Mich. 20, under a statute of like import, it was said:

"The defendant's counsel produced witnesses who were fathers of children, and had reared them from infancy to manhood, and inquired of them what was the pecuniary value to its parent of a male child, from the age of 5 years until it arrived at the age of 21, over and above the care, education, maintenance, and support of such child.  *  *  * The statute provides that—

" 'The jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death.'

"Testimony throwing any light upon what the pecuniary injury resulting from such death would be, is admissible. No exemplary damages are allowed; and there is no doubt, as contended for by counsel for defendant, that a pecuniary injury resulting from the death of a person can only be measured by the standard of the pecuniary value of the life of such person, and its loss to the person entitled to such damages when recovered. The testimony of witnesses who are shown by their knowledge or experience to be qualified to express an opinion upon the pecuniary value of such a life, is admissible, not for the purpose of controlling, but of aiding, the jury in arriving at a just conclusion."

See, also, *Sceba* v. *Railway Co.,* 189 Mich. 308 (L. R. A. 1918 C, 1090).

The defendants claim error because the child's mother was permitted to testify, over objection, that she was working in Detroit, the amount of her present wages, that she was familiar with the wages of women working in defense plants in Detroit, and the amount of their wages. In defendants' requests to charge the jury, no request was made to charge as to the temporary nature of present earnings in

defense plants, and defendants' counsel at the conclusion of the court's instructions to the jury was asked for suggestions and had none. We may assume that the jury had sufficient knowledge of current events, high wages, and war conditions, to give to the above testimony such importance as it might be entitled to, without any specific direction from the court to that effect. There would be no sense in assuming that the jurors lacked sufficient intelligence, or knowledge of present conditions, as to be ignorant of the difference between women's wages, past, present or future, in Oceana county and in defense plants in Detroit. The amount of damages in a case of this sort must rest in sound judgment of the jury. No one can now testify truthfully as to how long present high wages will continue in defense plants, when this will end, or even as to whether or not they will be doubled in the future. No one could with any certainty now testify that this child would live until she was 21 years old, or ever actually earn wages or contribute a single dollar to her parents during her minority. The verdict is necessarily based on uncertainty, and as long as the verdict is within reasonable probability it should not be disturbed because of a liberality in receiving testimony that may aid the jury.

The verdict in this case allowed approximately $2,100 for pecuniary loss suffered by the parents, aside from burial and other expenses. In *McDonald v. Champion Iron & Steel Co.*, 140 Mich. 401, under similar circumstances, this court considered that a judgment of $2,500 was not excessive. In *Rufner v. City of Traverse City*, 296 Mich. 204, 213, a verdict for $2,500, in addition to doctor, hospital and funeral expenses, was held not to be excessive and this court said:

"It is next urged that the verdict as remitted is grossly excessive. The resulting damages in this case are prospective and difficult of exact ascertainment. *Oakes* v. *Van Zomeren*, 255 Mich. 372. The determination of such damages will not be disturbed on appeal if reasonably within the range of the testimony. *Kinsler* v. *Simpson*, 257 Mich. 7. In the case at bar the testimony is conflicting as to the prospective earning power of the deceased, but the amount of damages allowed is not outside of the range of the testimony and should not be disturbed."

After all, the important question is whether the verdict is excessive and we conclude that the jury were not unduly influenced by the testimony as to the wages paid women in defense plants in Detroit, and that the verdict was not excessive. We have examined the other assignments of error and find no reversible error as to defendant Radley.

Judgment as to defendant Radley is affirmed, and as to the defendant board of county road commissioners reversed without new trial.

NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, C. J.

WIEST, J. (*dissenting*). Upon the question of prospective loss of earnings of the girl, plaintiff, over objection, was permitted to testify that wages now paid to women in war plants were from 65 to 80 cents per hour. Such war emergency wages bear no relation to earning capacity many years hence and leaves out compulsory school attendance and prohibitive hazardous employment of minors. The testimony was highly prejudicial. The jury awarded plaintiff as the present worth of prospec-

tive loss of earnings the sum of $2,100. The question is not whether the prejudicial testimony enhanced the verdict but one of law whether it could be considered at all by the jury.

For this error the judgment should be reversed and a new trial granted, with costs to defendants.

CHANDLER, J., concurred with WIEST, J.