DONOVAN CONSTRUCTION COMPANY v DEPARTMENT OF
TREASURY

Docket No. 61213. Submitted January 4, 1983, at Lansing.—Decided
May 18, 1983. Leave to appeal applied for.

Plaintiff Donovan Construction Company (Donovan), a Minnesota
corporation, operates a multistate construction business. Dono-
van is the sole shareholder of a number of subsidiary construc-
tion companies, including plaintiff Utley-James, Inc. (Utley-
James), a Michigan corporation. Donovan, Utley-James and
other construction subsidiaries of Donovan (Donovan Construc-
tion Group) are engaged in a unitary business operation. Dono-
van and Utley-James originally filed separate income tax re-
turns for the years 1971, 1972 and 1973. Donovan filed on a
separate accounting basis and Utley-James filed using the
three-factor formula of property, payroll and sales. Based on
the unitary nature of the Donovan Construction Group's busi-
ness, Donovan and Utley-James, together with other members
of the Donovan Construction Group, thereafter filed second
amended combined Michigan corporate income tax returns for
1971, 1972 and 1973 on the unitary basis using the three-factor
formula and including the corporations and ventures involved
in the Donovan Construction Group. The amended returns
requested a refund in the amount of $339,337 plus interest. The
defendants, Department of Treasury, Revenue Division and
Sydney D. Goodman, Commissioner of Revenue, denied plain-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 71 Am Jur 2d, State and Local Taxation § 576.
Construction and application of Uniform Division of Income for Tax
Purposes Act. 8 ALR4th 934.
[3-5] 71 Am Jur 2d, State and Local Taxation § 577.
Validity, under Federal Constitution, of state tax on, or measured
by, income of foreign corporation. 67 ALR2d 1322.
[6] 71 Am Jur 2d, State and Local Taxation § 593.
[7, 9] 5 Am Jur 2d, Appeal and Error § 545 et seq.
[8] 61A Am Jur 2d, Pleading § 230 et seq.
71 Am Jur 2d, State and Local Taxation § 605.
[10] 5 Am Jur 2d, Appeal and Error §§ 744, 751.
[11] 4 Am Jur 2d, Appeal and Error § 476.

tiffs permission to file using a unitary method and concluded that the separate accounting method was proper. Plaintiffs, thereafter, initiated this action in the Ingham Circuit Court seeking, in count I, a $339,337 income tax refund, plus interest, based on the first amended returns. In the alternative, in count II, Donovan sought a $212,380 income tax refund, plus interest, based on the second amended returns. Plaintiffs then filed a motion for partial summary judgment and the defendants filed a cross-motion for summary judgment. The trial court, Thomas L. Brown, J., issued an opinion and order granting plaintiffs' motion as to count I, ordering an income tax refund of $339,337, plus interest at 9% per annum from March 23, 1975, the date the combined returns were filed, and costs. The defendants appeal alleging errors in the determination of the proper method of apportionment and in the granting of the summary judgment. *Held:*

1. The trial court correctly found that the mere fact that separate accounting disclosed a greater tax liability was insufficient to invoke the relief provisions provided in the Income Tax Act.

2. The three-factor apportionment method is to be used where a taxpayer is engaged multistate in a unitary business; only if formulary apportionment does not fairly represent the extent of the taxpayer's business activity in the state may a different method, such as separate accounting, be employed.

3. The party seeking to employ an alternate apportionment method has the burden of showing that the formulary apportionment method is inappropriate by clear and convincing evidence. The evidence introduced to overcome the formula method of allocation must address each element of the formula's equation. Here, the department did not attack the components of the formulary apportionment method on an individual basis but instead relied upon the gross disparity in the respective computations.

4. The inadequacy of the three-factor formula in a given case cannot be established by comparing the dollar results obtained under it with the results obtained under the taxpayer's separate method of accounting. The inadequacy of the three-factor formula can be established if the state can meet the burden of showing by sufficient evidence that the formula does not fairly represent the extent of the taxpayer's business activities within the state.

5. Because the department admitted that its policy is to require a unitary business to file a combined return and thus

failed to raise this issue below, it is now precluded from raising it for the first time on appeal.

6. The department unequivocally conceded that Donovan was a unitary business enterprise. As a result of such admission, the allegations admitted were not ruled upon by the trial court. Therefore, the department is precluded from challenging such allegations on appeal. The Court of Appeals declined to remand for a determination whether the commissioner had a rational basis, under § 335, to refuse to accept Donovan's amended combined tax returns.

7. Plaintiff is awarded interest at 9% from the date the commissioner refused to accept the amended returns, rather than from the date the combined returns were filed.

Affirmed, as modified.

ALLEN, P.J., dissented. He agrees with the majority opinion in all respects except that he feels the case should be remanded to the circuit court for a determination of whether the commissioner properly exercised the discretion given him under § 335 to disallow the amended combined returns. He would not read the Attorney General's admission, that the Donovan Construction Group was a unitary business entitled and required to file its tax returns on a combined basis, as going so far as to eliminate the commissioner's broad discretion under § 335 to refuse to accept the returns if good cause should exist to reject the returns. He feels that the trial court erred in granting the summary judgment since a question of fact existed as to whether the Donovan Construction Group was a unified business enterprise whose combined fairness and current case law authorize a remand for an evidentiary hearing. The broad powers conferred upon the Court of Appeals authorize the Court to issue any order which ought to have been given or made.

OPINION OF THE COURT

1. TAXATION — INCOME TAX — BUSINESS TAXPAYERS — APPORTIONMENT OF TAXES — ALTERNATIVE APPORTIONMENT METHODS.

The Michigan Income Tax Act provides that any taxpayer having income from business activity which is taxable within and without Michigan shall allocate and apportion his net income as provided in the act; the act affords relief by providing an alternative method of apportionment where the formulary apportionment method does not fairly represent the extent of the taxpayer's business activity within the state (MCL 206.103, 206.195; MSA 7.557[1103], 7.557[1195]).

2. Taxation — Multistate Taxpayers — Apportionment of Taxes
   — Multistate Tax Compact.

   The Multistate Tax Compact, of which Michigan is a member,
   provides that a multistate taxpayer may elect to apportion or
   allocate its income in accordance with state law or may elect to
   apportion and allocate its income in accordance with the com-
   pact's three-factor apportionment formula (MCL 205.581; MSA
   4.146[101]).

3. Taxation — Multistate Taxpayers — Unitary Businesses —
   Apportionment of Taxes — Alternative Apportionment
   Methods.

   A taxpayer who is engaged multistate in a unitary business is to
   use the three-factor apportionment method to determine his
   liability for Michigan income taxes; a different method of
   apportionment, such as separate accounting, may be employed
   only if formulary apportionment does not fairly represent the
   extent of the taxpayer's business activity in the state (MCL
   206.115, 206.195; MSA 7.557[1115], 7.557[1195]).

4. Taxation — Multistate Taxpayers — Unitary Businesses —
   Apportionment of Taxes — Alternative Apportionment
   Methods — Evidence.

   The party seeking to employ an alternate method for the appor-
   tionment of income taxes of a multistate unitary business has
   the burden of showing that the formulary apportionment
   method is inappropriate by clear and convincing evidence;
   evidence introduced to overcome the formula method of alloca-
   tion must address each element of the formula's equation,
   being property, payroll and sales.

5. Taxation — Multistate Taxpayers — Unitary Businesses —
   Apportionment of Taxes — Three-Factor Formula — Alter-
   native Apportionment Methods.

   The inadequacy of the three-factor formula used for the appor-
   tionment of income taxes of a multistate unitary business
   cannot be established by comparing the dollar results obtained
   under it with the results obtained under the taxpayer's sepa-
   rate method of accounting; the inadequacy of the three-factor
   formula can be established if the state can meet the burden of
   showing by sufficient evidence that the formula does not fairly
   represent the extent of the taxpayer's business activities within
   the state, however, to do so requires an attack on each element
   of the formulary apportionment.

6. TAXATION — COMBINED REPORTING — COMMISSIONER OF REVENUE.

The Commissioner of Revenue is given discretionary power under the Income Tax Act to accept or reject the combined reporting of income (MCL 206.335; MSA 7.557[1335]).

7. APPEAL — PRESERVING QUESTION — ADMISSIONS.

A party who admits allegations is precluded from challenging such allegations on appeal where, as a result of the party's admission, the allegations admitted were not ruled upon by the trial court.

DISSENT BY ALLEN, P.J.

8. TAXATION — APPEAL — COMMISSIONER OF REVENUE — CORPORATE TAX RETURNS — COMBINED REPORTING — UNITARY BUSINESSES — SUMMARY JUDGMENTS.

*The question of whether the Commissioner of Revenue properly exercised his discretion under the statute regarding combined corporate tax returns in determining that a defendant corporation was a unified business enterprise under the statute is a question of fact; where such a question of fact exists a summary judgment is generally inappropriate unless it appears that it is impossible for the claim to be supported by evidence at trial (MCL 206.335; MSA 7.557[1335]).*

9. APPEAL — PRESERVING QUESTION.

*The fact that an appellate court only examines points that have been properly preserved at trial does not limit that court's power to prevent fundamental injustice.*

10. APPEAL — REMAND — CHANGES IN APPLICABLE LAW.

*Fairness suggests a remand, in order that the trial court may reconsider, rather than a reversal by the Court of Appeals where a motion to dismiss has been granted on authority of the applicable law as it then existed and where after an appeal is taken and the briefs filed on appeal a subsequent decision is announced changing the former prevailing law.*

11. COURTS — COURT OF APPEALS — POWERS — COURT RULES.

*The broad powers conferred upon the Court of Appeals authorize the Court to issue any order which ought to have been given or made (GCR 1963, 820.1[7]).*

*Evans & Luptak* (by *D. Michael Kratchman* and *Dennis F. Tomorsky),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for defendants.

Before: ALLEN, P.J., and BRONSON and WAHLS, JJ.

PER CURIAM. The Department of Treasury and Commissioner of Revenue appeal as of right from a summary judgment entered November 12, 1981, in the Ingham County Circuit Court, awarding plaintiffs a corporate income tax refund of $339,337, plus interest, for the years 1971, 1972 and 1973.

Donovan Construction Company (Donovan) is a Minnesota corporation engaged in the operation of a multistate general construction and electric utility transmission and distribution system construction business. It is the sole shareholder of a number of subsidiary construction companies, including Utley-James, Inc., a Michigan corporation (Utley-James), the co-plaintiff in this suit. Donovan, together with Utley-James and other construction subsidiaries of Donovan (Donovan Construction Group), is engaged in a unitary business operation.

The Donovan Construction Group frequently makes joint bids, exchanges equipment, transfers personnel, establishes common purchasing and personnel procedures, solicits business for and makes sales between other members of the group and provides intercorporate financing within the group. In addition, the executive personnel of the Donovan Construction Group is fully integrated and provides centralized management control over the activities of the group. Donovan arranges all financing for the members of the group, approves all significant construction bids and capital acqui-

sitions, sets salary levels and bonuses and requires periodic reports, statements and budgets for review by itself.

Donovan and Utley-James originally filed separate income tax returns for 1971, 1972 and 1973. Donovan filed its original returns on a separate accounting basis, and Utley-James filed its original returns using the three-factor formula. The income tax returns of Utley-James had been previously audited by the State of Michigan and its use of the three-factor formula had been reviewed and approved.

Based on the unitary nature of the Donovan Construction Group's business, Donovan and Utley-James, together with the other members of the Donovan Construction Group, filed second amended combined Michigan corporate income tax returns for 1971, 1972 and 1973 on the unitary basis using the three-factor formula and including the corporations and ventures involved in the Donovan Construction Group. The returns were filed pursuant to § 335 of the Michigan Income Tax Act of 1967, MCL 206.335; MSA 7.557(1335).[1] The amended returns requested a refund in the amount of $339,337, plus interest.

The department denied plaintiffs' request for a refund on the basis that:

"This department has always permitted and required construction contractors who maintain adequate job cost records to file on a separate accounting basis.

"Sec. 195 of the Michigan Income Tax Act permits

---

[1] The filing of corporate income tax returns on a combined basis in the instant case fell under § 335 of the Michigan Income Tax Act of 1967, as amended, MCL 206.335; MSA 7.557(1335). The corporate income tax was repealed by 1975 PA 233 and replaced by the single business tax, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.* Combined reporting now falls under the Single Business Tax Act, MCL 208.77; MSA 7.558(77).

the department to require separate accounting whenever it more accurately reflects the taxpayer's activity in this state. The original returns filed for 1971, 1972 and 1973 contain adequate schedules for us to conclude that separate accounting properly reflects your activity within the State of Michigan. Your request for permission to file Michigan corporation income tax returns using a unitary method is respectfully denied."

On June 4, 1976, plaintiffs initiated this suit. In count I, plaintiffs sought a $339,337 income tax refund plus interest based on the second amended returns. In the alternative, in count II Donovan sought a $212,380 income tax refund plus interest based on the first amended returns. The department's answer was filed on June 22, 1976. Plaintiffs' request for admissions was filed on September 21, 1977, and answered on October 3, 1977. On October 28, 1977, plaintiffs filed their partial motion for summary judgment, based on GCR 1963, 117.2, subds (2) and (3). On January 19, 1978, the department answered plaintiffs' motion for partial summary judgment and filed its cross-motion for summary judgment, based on GCR 1963, 117.2(3). On October 14, 1981, Circuit Judge Thomas L. Brown issued his opinion, granting plaintiffs' motion for partial summary judgment as to count I. An order consistent with the opinion was entered on November 12, 1981, ordering an income tax refund of $339,337, plus interest at 9% per annum from March 23, 1975, the date the combined returns were filed, and costs.

The chief controversy in this case is whether plaintiffs are entitled to employ formulary apportionment or must provide a separate accounting to determine their Michigan income tax liability. There is no dispute relative to the accuracy of any computations. Rather, the case focuses on the

proper method of apportionment and whether summary judgment was the proper method to decide this controversy.

## I. The Applicable Statutory Provisions

The Michigan Income Tax Act, MCL 206.1 *et seq.;* MSA 7.557(101) *et seq.,* provides that any taxpayer having income from business activity which is taxable within and without this state shall allocate and apportion his net income as provided in the act. MCL 206.103; MSA 7.557(1103). This is a version of the Uniform Division of Income for Tax Purposes Act. See 7A, Uniform Laws Annotated, Business & Financial Laws, p 93. For the tax years 1971, 1972 and 1973, the act provided the following formulary apportionment method in MCL 206.115; MSA 7.557(1115):

"All business income, other than income from transportation services, domestic insurers and financial organizations, shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3." [1975 PA 233 deleted the words "domestic insurers and financial organizations" following "transportation services".]

The three factors, property, payroll and sales, are defined in MCL 206.116 to 206.123; MSA 7.557(1116) to 7.557(1123). For cases where formulary apportionment does not fairly represent the extent of the taxpayer's business activity within this state, § 195 of the act affords a relief provision:

"If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpay-

er's business activity in this state, the taxpayer may petition for or the commissioner may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(a) Separate accounting;

*  *  *

"An alternative method will be effective only with approval by the commissioner." MCL 206.195; MSA 7.557(1195).

Michigan joined the Multistate Tax Compact, MCL 205.581 *et seq.;* MSA 4.146(101) *et seq.,* in 1970. It provides that a multistate taxpayer may elect to apportion or allocate its income in accordance with state law or may elect to apportion and allocate its income in accordance with Article IV of the compact. MCL 205.581, art III(1); MSA 4.146(101), art III(1). Article IV permits a multistate taxpayer to apportion its income by using a three-factor apportionment formula similar to the Michigan apportionment formula contained in MCL 206.115; MSA 7.557(1115). MCL 205.581, art IV(9); MSA 4.146(101), art IV(9). The compact also contains a relief provision similar to MCL 206.195; MSA 7.557(1195). MCL 205.581, art IV(18); MSA 4.146(101), art IV(18).

## II. Application of Section 195

The department contends that the "gross disparity" between Michigan income attributable to plaintiffs under the three-factor formula and Michigan income attributable to plaintiffs under the separate accounting in the second amended returns is in itself a sufficient reason to justify the commissioner to exercise his authority under § 195 to employ the separate accounting method. Donovan's original returns, using separate accounting,

disclosed Donovan earned the following amounts from its Michigan construction contracts:

| Year | Income |
|------|--------|
| 1971 | $495,902.96 |
| 1972 | 824,726.38 |
| 1973 | 1,623,643.07 |

By contrast, the second amended returns, using the three-factor apportionment formula, attributed the following income to Michigan:

| Year | Income (or Loss) |
|------|------------------|
| 1971 | $740,246.00 |
| 1972 | 321,296.00 |
| 1973 | (84,724.00)—Loss |

Plaintiffs argue, and the trial court found, that the mere fact that separate accounting disclosed a greater tax liability was insufficient to invoke the relief provisions of § 195.[2] We agree. Where the taxpayer is engaged multistate in a unitary business (see issue IV *infra),* the three-factor apportionment method is to be used. Only if formulary apportionment does not fairly represent the extent of the taxpayer's business activity in the state may a different method, such as separate accounting, be employed. The party seeking to employ an alternate apportionment method has the burden of showing that the formulary apportionment method is inappropriate by clear and convincing evidence. See *Butler Bros v McColgan,* 315 US 501; 62 S Ct 701; 86 L Ed 991 (1942); *St Johnsbury Trucking*

---

[2] "In the instant case the application of the separate accounting solely on the basis that there is a gross disparity in the results between the different methods results in the use of the separate accounting because the tax liability is greater and not because separate accounting more accurately reflects the corporate taxpayer's unitary business in the state. This Court is of the opinion that, in addition to the gross disparity between the results, additional evidence should be considered in demonstrating that the statutory formula inadequately or inaccurately represents the taxpayer's unitary business activity in the taxing state."

*Co, Inc v New Hampshire,* 118 NH 209, 212; 385 A2d 215, 217 (1978); *Deseret Pharmaceutical Co, Inc v State Tax Comm,* 579 P2d 1322, 1326 (Utah, 1978). See, generally, Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act (Part I),* 15 UCLA L Rev 156 (1967). Evidence introduced to overcome the formula method of allocation must address each element of the formula's equation. *Butler Bros v McColgan,* 17 Cal 2d 664, 677-678; 111 P2d 334, 341 (1941), *aff'd* 315 US 501; 62 S Ct 701; 86 L Ed 991 (1942).

As was stated by Professor William J. Pierce of the University of Michigan Law School and draftsman of the uniform act:

"The Uniform Act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 percent of income, and no more or no less, would be taxed." Pierce, *The Uniform Division of Income for State Tax Purposes,* 35 Taxes 747, 748 (1957).

Because the whole purpose of the uniform act could be totally destroyed if the revenue department in each state were permitted to cast aside the three-factor formula merely because it yielded less than an alternate method of apportionment, the courts have held that the inadequacy of the three-factor formula cannot be established by comparing the dollar results obtained under it with the results obtained under the taxpayer's separate method of accounting. *Mobil Oil Corp v Vermont Comm'r of Taxes,* 445 US 425; 100 S Ct 1223; 63 L Ed 2d 510 (1980); *ASARCO v Idaho State Tax Comm,* 458 US 307; 102 S Ct 3103; 73 L Ed 2d 787 (1982); *Butler Bros v McColgan, supra.* However, the inadequacy of the three-factor formula can be established if the state can meet the burden of

showing by sufficient evidence that the formula
does not fairly represent the extent of the taxpay-
er's business activities within the state. To do so
requires an attack on each element of the formu-
lary apportionment.

"The *Butler Brothers* case demonstrates that *the
mere production of a separate accounting system for
one of the branches of an entire or unitary business is
insufficient without more to overthrow an apportion-
ment formula based on the appropriate factors of sales,
property and payroll.* The fairness of the three-factor
formula was thereby settled. Only if the taxpayer can
meet the burden of showing by sufficient evidence that
the allocation formula does not apportion to California
that part of the entire net income reasonably attribut-
able to the business done in the state will the court
disapprove its use in the particular case. *The evidence
introduced to overcome the formula method of alloca-
tion must go to each element of the formula equation.*"
(Emphasis added.) *Edison California Stores v McColgan,*
30 Cal 2d 472, 479; 183 P2d 16 (1947).

The department did not attack the components
of the formulary apportionment method on an
individual basis but instead relied on the "gross
disparity" in the respective computations. The
department cites *Hans Rees' Sons, Inc v Maxwell,*
283 US 123; 51 S Ct 385; 75 L Ed 879 (1931);
*Norfolk & W R Co v Missouri State Tax Comm,*
390 US 317; 88 S Ct 995; 19 L Ed 2d 1201 (1968);
*Moorman Mfg Co v Bair,* 437 US 267; 98 S Ct
2340; 57 L Ed 2d 197 (1978), as supporting its
proposition that a gross disparity in results be-
tween the three-factor apportionment and individ-
ual accounting methods *is in itself sufficient rea-
son* to conclude that the three-factor apportion-
ment does not fairly reflect the extent of the
taxpayer's business activities within the state.

However, we note that all of the cases cited involved situations where the formulary apportionment resulted in a greater tax then appropriate considering the business transacted within the state. All of the cases cited *limited* the state's application of the three-factor formula. None of the cases involved the situation found in the instant case where the "gross disparity" was used to levy a higher tax than would result from application of the three-factor apportionment method.

### III. Discretionary Power Under Section 335

Under § 335 of the Michigan Income Tax Act, discretionary power is given to the Commissioner of Revenue to accept or reject combined reporting. MCL 206.335; MSA 7.557(1335).[3] In *Clarke-Gravely Corp v Dep't of Treasury,* 412 Mich 484; 315 NW2d 517 (1982), § 335 was broadly construed. Justice Fitzgerald wrote in his dissenting opinion:

"Inherent in the discretionary language of § 335 is the commissioner's authority to make combined reporting a prospective election only, or to give it limited retroactive effect. The fact that plaintiffs were permitted for some years to retroactively utilize the combined reporting technique does not nullify the commissioner's discretionary power for the year at issue." 412 Mich 493.

---

[3] "In the discretion of the commissioner, any taxpayer which owns or controls either directly or indirectly substantially all the capital stock of 1 or more other corporations, or substantially all the capital stock of which is owned or controlled either directly or indirectly by 1 or more other corporations, or by interests which own or control either directly or indirectly substantially all the capital stock of 1 or more corporations *may be required or permitted to make a report on a combined basis* covering any such other corporations and setting forth such information as the commissioner may require * * *." (Emphasis added.)

Justice RYAN, writing for the majority, agreed with Justice FITZGERALD on this issue:

"The facts of this case are accurately stated in Justice FITZGERALD'S opinion. We agree with his view that *the tax commissioner has broad discretionary power to require or permit combined reporting.*" (Emphasis added.) 412 Mich 488.

On appeal the department argues that the question of whether to accept or reject the combined returns was a question of fact which was never addressed by the trial court. Plaintiffs-appellees note that the department's answer to plaintiffs' motion for summary judgment admitted "that the Donovan Construction Group, being a unitary business, is entitled to and required to file its income tax returns on a combined basis", and having admitted such, the department may not now, for the first time, raise the issue on appeal.

The department correctly notes that the circuit court did not consider whether the commissioner acted within his discretion in rejecting plaintiffs' amended combined returns. The circuit court did not consider the issue because the department admitted that plaintiffs were entitled and required to file their income tax returns on a combined basis. Because the department admitted that its policy is to require a unitary business to file a combined return and thus failed to raise this issue below, it is now precluded from raising it for the first time on appeal. See *Maxson v Bay County,* 290 Mich 86, 89; 287 NW 389 (1939).

At oral argument, the department cited two recent cases, *ASARCO, Inc v Idaho State Tax Comm,* 458 US 307; 102 S Ct 3103; 73 L Ed 2d 787 (1982), and *F W Woolworth Co v Taxation & Revenue Dep't of New Mexico,* 458 US 354; 102 S Ct 3128; 73 L Ed 2d 819 (1982).

According to the department, these decisions changed the concept of a "unitary business" so that it can no longer be said that the Donovan Construction Group is a "unitary business". We find no occasion to address the impact of these cases. The department has unequivocally conceded that Donovan was a "unitary business enterprise". Where, as a result of a party's admission, allegations admitted are not ruled upon by the trial court the party admitting such allegations is precluded from challenging such allegations on appeal. *Maxson v Bay County, supra,* see also *Ass'n of Hebrew Teachers v Jewish Welfare Federation,* 62 Mich App 54; 233 NW2d 184 (1975). Accordingly, we decline to remand to the circuit court to determine whether the Commissioner of Revenue had a rational basis, under § 335, to refuse to accept Donovan's amended combined tax returns.

## IV. INTEREST ON TAX REFUNDS

The judgment issued November 12, 1981, ordered interest on the tax refund at "9% per annum * * * to be computed from March 23, 1975, which is the date the plaintiffs filed their combined returns". While conceding that plaintiffs are entitled to interest under § 6013 of the Revised Judicature Act, MCL 600.6013; MSA 27A.6013, the department contends the trial court erred in awarding interest under the Michigan Income Tax Act of 1967, as amended. Prior to calendar year 1974, there was no statutory authority for the payment of interest on income tax refunds. In the spring of 1974, refunds were delayed with the result that considerable criticism was expressed by the public and the press.[4] In response, the Legisla-

---

[4] An article entitled, "You May Wait Until Fall for Your State Tax Refund", by Gary F. Schuster, appeared in *The Detroit News* on

ture amended the statute to allow for the payment of interest on tax refunds for the tax years beginning on or after January 1, 1974. The department argues that, since the Legislature made the amendment effective for the tax years beginning with 1974, it is obvious the Legislature did not intend interest to be paid on refunds for the three tax years prior to 1974.

The department's position overlooks the impact of the recent decision in *Clarke-Gravely, supra.* In that case, the Supreme Court held that the taxpayer was entitled to income tax refunds based on the filing of amended combined corporate returns for 1972 and 1973. As to the 1971 return, the Supreme Court remanded to allow the tax commissioner to exercise his discretion under § 335 to determine whether a rational basis existed to refuse the return. If no rational basis was found to exist on remand, the Court held "the refund shall be paid *with interest* from the date of the commissioner's original refusal to accept the 1971 amended return". (Emphasis added.) 412 Mich 489.

The department claims that *Clarke-Gravely* is inapposite, as the question of whether interest was payable at all was not before the Court. According to the department, only the question of the date the interest accrued was at issue. It is true that the question of *whether* interest could be paid was not discussed in the Court's opinion. Nevertheless, in order for the Court to determine *when* interest was payable, the Court had to decide the threshold question of *whether* interest was payable. Furthermore, we have obtained from the Supreme Court the briefs submitted on appeal from this Court. We

Wednesday, May 1, 1974, p 3A. In his article, Mr. Schuster referred to a bill introduced by Senator Gilbert E. Bursley. With some amendments, Senator Bursley's bill, Senate Bill 1319, was enacted into law as 1974 PA 308.

find that the department's brief argued, as does the department's brief here, that because the Legislature authorized payment of interest with tax refunds beginning January 1, 1974, no interest was due under the Income Tax Act of 1967 for tax years prior to 1974. Accordingly, we follow *Clarke-Gravely* and award interest to plaintiffs at 9% from December 9, 1975, the date the commissioner refused to accept the amended returns, rather than from March 23, 1975, the date the combined returns were filed.[5] As so modified, the judgment of the circuit court is affirmed.

No costs, a public question being involved.

ALLEN, P.J. *(dissenting).* I believe that this cause should be remanded to the circuit court for a determination of whether the Commissioner of Revenue properly exercised the discretion given him under § 335 to disallow the amended combined returns. In all other respects I agree with the majority opinion. The majority decline to remand on grounds that at the trial court the department admitted the Donovan Construction Group was a unitary business and was entitled and required to file its tax returns on a combined basis.

I believe the majority read too much into the Attorney General's admission on the motion for summary judgment that plaintiffs were a unitary business required to file their tax returns on a three-factor unitary basis. I read that admission as conceding that prima facie plaintiffs are a unified business and, as such, should submit their returns on a combined basis. But I don't read the admission as going so far as to eliminate or negate the

---

[5] The judgment entered by the trial court awarded interest at 9% beginning March 23, 1975, the date the combined returns were filed.

commissioner's broad discretion under § 335 to refuse to accept the returns if good cause should exist to reject the returns. I don't believe the commissioner ever intended to abdicate that statutory responsibility. Yet that is precisely what the majority must assume in order to hold that the Court is foreclosed from remanding the issue back to the trial court for a hearing on the merits.

Further, the question of whether the commissioner properly exercised his § 335 discretion turns on whether the Donovan Construction Group was in fact "a unified business enterprise". Whether it was such, or not, is a question of fact. Where questions of fact exist, summary judgment is generally inappropriate. *Croton v Gillis*, 104 Mich App 104; 304 NW2d 820 (1981). Summary judgment is inappropriate unless it appears that it is impossible for the claim to be supported by evidence at trial. *Ceplin v Bastian-Blessing Division of Golconda Corp*, 90 Mich App 527; 282 NW2d 380 (1979). Therefore, I believe that the trial court erred, though understandably so, in granting summary judgment.

The Ingham Circuit Court issued its opinion on October 14, 1981, and judgment was entered November 12, 1981. On February 1, 1982, the opinion in *Clarke-Gravely Corp v Dep't of Treasury*, 412 Mich 484; 315 NW2d 517 (1982), was issued. The *ASARCO, Inc v Idaho State Tax Comm*, — US —; 102 S Ct 3103; 73 L Ed 2d 787 (1982), and *F W Woolworth Co v Taxation & Revenue Dep't of New Mexico*, 458 US 354; 102 S Ct 3128; 73 L Ed 2d 819 (1982), opinions were released June 29, 1982. It was not until those opinions were released that the department had reason to believe that, if there was not a certainty at least a strong possibility existed. the Donovan Group was not a unitary

business, which under the broad discretionary power given the commissioner by *Clarke-Gravely* might be precluded from filing a combined return. At oral argument on appeal, the assistant attorney general representing the department frankly stated that, had he known at the trial court level as much as he now knows by reason of *ASARCO-Woolworth,* he never would have stipulated that plaintiffs were a unitary business or were entitled to file a combined return.

While I am not convinced that *ASARCO* and *Woolworth* change the law as drastically as the Attorney General contends, I am persuaded that a genuine issue of fact exists as to whether plaintiffs are a unitary enterprise whose combined tax returns must be accepted by the commissioner. This case is too important to the state and to the multistate operated business potentially affected thereby to make a decision without remanding to the trial court for an evidentiary hearing.

Under these circumstances, fundamental fairness and current case law authorize a remand. The fact that an appellate court only examines points that have been properly preserved at trial does not limit the court's power to prevent fundamental injustice. *Morris v Radley,* 306 Mich 689, 699; 11 NW2d 291 (1943). Where a motion to dismiss has been granted on authority of the applicable law as it then existed and after appeal is taken and briefs filed on appeal a subsequent decision is announced changing the former prevailing law "fairness suggests remand, rather than reversal, in order that the trial judge may reconsider". *Grist v Upjohn Co,* 362 Mich 470, 472; 107 NW2d 763 (1961). Likewise, in *Pierce v Riley,* 16 Mich App 419; 168 NW2d 309 (1969), where a contrary decision was announced by the Supreme

Court after the trial court found in favor of defendants, this Court said:

"In view of the importance of the issue presented by this case to the state as a whole, and the peculiar timing of this case in relation to both *Thompson* cases *[Thompson v Enz,* 2 Mich App 404; 140 NW2d 563 (1966), *rev'd* 379 Mich 667; 154 NW2d 473 (1967)], we remand the case to the trial court for reconsideration in light of *Thompson v Enz,* 379 Mich 667; 154 NW2d 473 (1967); with both parties being given the right to present additional evidence as to reasonableness factors not pleaded or presented at the prior hearing." 16 Mich App 422.

Similarly, in *Clarke-Gravely, supra,* after the Supreme Court decided that the commissioner had broad discretionary powers to permit or require combined reporting, to decide whether certain criteria have been met, and to request additional information before making such determination, the Supreme Court remanded the case to the Commissioner of Revenue for the exercise of such discretion. The broad powers conferred upon this Court by GCR 1963, 820.1(7) authorize this Court to issue any order which ought to have been given or made.