DETROIT BANK & TRUST COMPANY v DEPARTMENT OF
TREASURY

Docket No. 75585. Submitted March 5, 1985, at Lansing.—Decided
September 3, 1985.

Petitioner, Detroit Bank & Trust Company, deducted its losses
from participating in certain out-of-state partnership trusts in
arriving at its taxable income for its Michigan financial institu-
tions tax returns for the tax years 1974 and 1975. The trusts
were under the trusteeship of the First Security Bank of Utah,
were administered in Utah and had no offices, property, payroll
or receipts in Michigan. The respondent, Michigan Department
of Treasury, disagreed with petitioner's treatment of the part-
nership losses and contended that the losses should have been
allocated entirely to Utah. Respondent conducted an audit of
petitioner's 1974 and 1975 tax returns. In June 1978, respon-
dent issued a notice of intent to assess tax and interest. In June
1979, respondent afforded petitioner an informal conference
with a hearing referee, and on November 26, 1980, respondent
issued a decision assessing a tax of $208,591 plus $88,832.79
interest. Petitioner appealed to the Michigan Tax Tribunal.
The tribunal's hearing officer found that petitioner had prop-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, State and Local Taxation § 8.

Construction of statute or ordinance giving property tax exemption
or favorable property tax rate to older persons. 45 ALR3d 1153.

[2] Am Jur 2d, State and Local Taxation §§ 603-605.

Counsel's appeal in civil case to self-interest or prejudice of jurors
as taxpayers, as ground for mistrial, new trial or reversal. 93
ALR3d 556.

[3] Am Jur 2d, State and Local Taxation §§ 399, 436, 437.

Construction and application of statutes apportioning or prorating
estate taxes. 71 ALR3d 247.

[4] Am Jur 2d, State and Local Taxation § 399.

Construction and application of statutes apportioning or prorating
estate taxes. 71 ALR3d 247.

[5] Am Jur 2d, State and Local Taxation §§ 671-677.

Validity and construction of state statute making successor corpora-
tion liable for taxes of predecessor. 65 ALR3d 1181.

[6] Am Jur 2d, State and Local Taxation §§ 443 et seq.

See the annotations in the ALR3d/4th Quick Index under Taxes.

erly attributed to Michigan its distributive share of the partnership trust losses after finding that the trusts were nothing more than an extension of petitioner's regular trade or business of investing and financing. In an opinion and judgment issued December 8, 1983, the Tax Tribunal adopted the hearing officer's findings of fact and conclusions of law and ordered the assessment canceled. Respondent appeals from that judgment.
*Held:*

1. The Tax Tribunal's decision is authorized by law and is supported by competent, material and substantial evidence on the whole record.

2. The great weight of the evidence clearly indicated that petitioner's participation in the subject leveraged-lease transaction was undertaken in the normal, regular course of its banking business. Thus, § 151 of the Income Tax Act of 1967, MCL 206.151, is the applicable provision to determine the proper attribution of petitioner's taxable income. The apportionment percentages applied in petitioner's tax returns were proper under § 151.

3. It is the petitioner bank which is the "taxpayer", not the partnership trusts in which petitioner participated. The existence of the partnership trusts as separate legal entities was not relevant in determining petitioner's taxable income.

Affirmed.

1. TAXATION — JUDICIAL CONSTRUCTION.

It is the established rule in the interpretation of statutes levying taxes not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out; in case of doubt they are construed most strongly against the government and in favor of the citizen.

2. TAXATION — APPEAL — TAX TRIBUNAL.

The Court of Appeals, in reviewing a decision of the Tax Tribunal not related to valuation or allocation of property tax, is limited to determining whether the decision is authorized by law and whether it is supported by competent, material and substantial evidence on the whole record.

3. TAXATION — BANKS AND BANKING — APPORTIONMENT OF TAXES.

A bank and trust company which was a financial organization and also a financial institution under the provisions of the Michigan Income Tax Act of 1967 as they existed during the tax years 1974 and 1975 properly utilized the provisions of the act dealing with allocation and apportionment of income and

taxability of income in another state in conjunction with the act's provision dealing with the taxable income of a financial organization in determining its income tax on taxable income for the tax years 1974 and 1975 where the bank and trust company's income was due only to business conducted in Michigan and in its office in London, England; it was not error to allocate to Michigan losses from participating in partnership trusts which were administered in Utah where such participation was undertaken in the regular course of its banking business, there was no evidence of any fees, commissions or other compensation for financial services rendered in Utah, there was no evidence of gross income resulting from the bank's operation as a financial organization in Utah, and where the bank's activities of considering, studying and arranging participation in the partnership trusts took place in Michigan (MCL 206.10[2], and [3], 206.34, 206.71[1], 206.103, 206.105, 206.151; MSA 7.557[110][2], and [3], 7.557[134], 7.557[171][1], 7.557[1103], 7.557[1105], 7.557[1151]).

4. TAXATION — APPORTIONMENT OF TAXES — ALTERNATIVE METHODS OF APPORTIONMENT.

The Tax Commissioner may approve an alternative method of allocation and apportionment or require the use of different factors than those specified in the Michigan Income Tax Act of 1967 where the allocation and apportionment provisions of the act do not fairly represent the extent of a taxpayer's business activity in this state (MCL 206.195; MSA 7.557[1195]).

5. TAXATION — PARTNERSHIPS — SINGLE BUSINESS TAX.

Partnerships were not taxed as business entities under the Michigan Income Tax Act of 1967; partnerships are expressly included in the definition of "person" in the Single Business Tax Act (MCL 206.16, 206.26, 208.6[1]; MSA 7.557[116], 7.557[126], 7.558[6][1]).

6. TAXATION — INCOME TAX ACT OF 1967.

It is the intention of the Michigan Income Tax Act of 1967 that the income subject to tax under the act be the same as taxable income as defined and applicable to the subject taxpayer in the Internal Revenue Code, except as otherwise provided in the Michigan act (MCL 206.2[3]; MSA 7.557[102][3]).

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III*, and *Robert F. Rhoades*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for respondent.

Before: ALLEN, P.J., and GRIBBS and T. GILLES-PIE,* JJ.

ALLEN, P.J. Respondent, Michigan Department of Treasury, appeals as of right from a December 8, 1983, judgment of the Michigan Tax Tribunal canceling an income tax assessment against petitioner, Detroit Bank & Trust Company. We affirm.

The issue in this appeal concerns the treatment for income tax purposes of petitioner's losses from participating in out-of-state partnerships trusts. In 1974, petitioner, a Michigan banking corporation, agreed to become an equity lender in a leveraged-lease transaction involving the National Railroad Passenger Corporation (Amtrak). Amtrak wished to purchase 110 diesel locomotives manufactured by General Motors Corporation. Since no single bank would want to handle this $50 to $60 million deal, Amtrak arranged with ITEL Leasing Corporation for leveraged-lease financing. In this arrangement, petitioner and eight other financial institutions agreed to contribute 27% of the financing, with the remainder to come from secured long-term lenders. Petitioner's share was 15% to 17% of the 27%.

On January 1 and May 1, 1974, petitioner and the other banks executed two trust agreements involving purchase and leaseback arrangements. Two trusts were established because the locomotives were not available for delivery at the same time. Both trusts were leveraged leases in which the trusts purchased, as owners, the locomotives and leased them to Amtrak. The leases were for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

15-year terms, apparently representing the useful lives of the locomotives.

The trusts were under the trusteeship of the First Security Bank of Utah, as arranged by ITEL. The trusts were administered in Utah and had no offices, property, payroll or receipts in Michigan.

Before petitioner entered into the leveraged leases, First Security Bank of Utah obtained a letter ruling from the Internal Revenue Service on behalf of petitioner and the other owner-participants and Amtrak. The ruling provided that for federal tax purposes the participants were viewed as "owners" of the lease equipment. In addition, the trusts created by the owner-participants were considered "partnerships" and not taxable "corporations" for federal income tax purposes. The partners/owners-participants each had to take into account their proportionate shares of the income, gain, loss, deductions and credit of the partnerships. Each owner-participant would be entitled to deductions for accelerated depreciation, interest expense and investment tax credits in determining federal taxable income.

In computing their informational federal partnership income tax returns, the partnership trusts deducted depreciation, interest expenses and other fees from the gross income from renting the locomotives to Amtrak. Both partnership trusts had separate employer identification numbers, which were different from petitioner's employer identification number. The principal business activity of the partnership trusts, as indicated on the federal informational returns, was "equipment leasing".

Petitioner's distributive share of partnership losses was $1,313,865 in 1974, and $960,273 in 1975. For the tax years 1974 and 1975, petitioner deducted these losses in arriving at its taxable income for its Michigan financial institutions tax

returns (MI-1120 FIN). On each MI-1120 FIN return, petitioner designated its principal business activity as "finance".

Since petitioner maintained an office in London, England, as well as its Michigan offices, petitioner followed § 151 of the Michigan Income Tax Act of 1967, MCL 206.151; MSA 7.557(1151), and apportioned 94.635% (1974) and 94.4575% (1975) of its federal taxable income to Michigan, as otherwise adjusted by MCL 206.34; MSA 7.557(134).[1] Petitioner attributed the remainder of its taxable income to its London office. Petitioner did not attribute any of its income to Utah or any other state.

Respondent disagreed with petitioner's treatment of the partnership losses and contended that these losses should have been allocated entirely to Utah. Respondent conducted an audit of petitioner's 1974 and 1975 returns. In June 1978, respondent issued a notice of intent to assess tax and interest. In June 1979, respondent afforded petitioner an informal conference with a hearing referee, and on November 26, 1980, respondent issued a decision assessing a tax of $208,591 plus $88,832.79 interest.

Petitioner appealed to the Michigan Tax Tribunal. The tribunal held a hearing on May 24 and 25, 1982. At the hearing petitioner presented two witnesses, Robert Olsen, petitioner's vice-president and director of corporate taxes, and Donald Mann, assistant director of the bank and trust division of the Michigan Department of Commerce, Financial Institutions Bureau. These witnesses testified that a leveraged-lease transaction, where a Michigan bank acts as a partner in a multi-bank partnership

---

[1] These and other pertinent provisions of the Michigan Income Tax Act of 1967, 1967 PA 281; MCL 206.1 et seq.; MSA 7.557(101) et seq., were repealed by 1975 PA 233 and replaced by the Single Business Tax Act, MCL 208.1 et seq.; MSA 7.558(1) et seq.

trust to purchase equipment, is an activity in the regular course of the bank's Michigan banking business.

According to Olsen, petitioner had previously been involved as a single investor in out-of-state leveraged-lease transactions with a grantor trust. In addition, approximately 25% of petitioner's commercial loans were made to customers outside Michigan. Such loans were often handled by a number of banks joining together in participation-loan agreements. However, the Utah trust agreements represented the first time that petitioner had engaged in an out-of-state leveraged-lease transaction with a number of banks acting as partners in a partnerhsip trust.

Petitioner called as adverse witnesses, Frederick Lynch, an administrator of the single business tax for the Department of Treasury, and Francis Gould, an administrator of respondent's inheritance tax division and previously an administrator of the financial institutions tax. These witnesses opined that petitioner's share of the partnership losses should have been attributed to Utah, not Michigan. Both saw the partnership trusts as separate legal entities distinct from petitioner bank.

In Lynch's view, the trusts were separate "persons" and "taxpayers" under the Michigan Income Tax Act of 1967. The department took the position it did because partnerships were involved; previously, the department had taken no exception to other similar activities undertaken by petitioner bank without the existence of partnerships. Witness Lynch acknowledged that the activities of the Utah trusts were a single trade or business with petitioner's other banking activities.

The Michigan Tax Tribunal hearing officer found that petitioner, in determining its Michigan taxable income, had properly attributed to Michi-

gan its distributive share of the partnership trust losses. The hearing officer concluded that although the trusts had been designated "partnerships" by the IRS, in no other particulars had they taken on a partnership entity form of identification. They could not properly be viewed as "persons" or "taxpayers" under the Michigan act. Insofar as the partnership trusts were organized to conduct leveraged-leasing activities in which petitioner was a "partner" or equity lender, the hearing officer found that the trusts were nothing more than an extension of petitioner's regular trade or business of investing and financing.

In an opinion and judgment issued December 8, 1983, the Tax Tribunal adopted the hearing officer's findings of fact and conclusions of law. The tribunal ordered the assessment canceled.

On appeal respondent argues that the assessment was valid because the partnership trusts constituted business entities separate and distinct from their individual partners. Respondent maintains that none of the income or loss from the trusts' business activities was attributable to Michigan, since the trusts were based in Utah and had no property, payroll or sales in Michigan. Respondent relies on *Grunewald v Dep't of Treasury*, 104 Mich App 601; 305 NW2d 269 (1981), *lv den* 412 Mich 875 (1981).

We find respondent's arguments unpersuasive. To begin with, we note the following well-settled principles governing construction of tax laws:

"In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the govern-

ment, and in favor of the citizen." *Hart v Dep't of Revenue,* 333 Mich 248, 252; 52 NW2d 685 (1952), quoting *Gould v Gould,* 245 US 151, 153; 38 S Ct 53; 62 L Ed 211 (1917).

In reviewing a decision of the Tax Tribunal, not related to valuation or allocation of property tax, this Court is limited to determining whether the decision is authorized by law and whether it is supported by competent, material and substantial evidence on the whole record. *Terco, Inc v Dep't of Treasury,* 127 Mich App 220, 223; 339 NW2d 17 (1983); *Kalamazoo Aviation History Museum v Kalamazoo,* 131 Mich App 709, 713; 346 NW2d 862 (1984), *lv den* 419 Mich 936 (1984). After carefully reviewing the briefs and record in the present case, we find that this standard is satisfied.

Under the provisions of the Michigan Income Tax Act of 1967 as they existed during the tax years 1974 and 1975, petitioner was a "financial organization" as defined in MCL 206.10(3); MSA 7.557(110)(3).[2] As such, petitioner could not employ the apportionment provisions of § 115, MCL 206.115; MSA 7.557(1115):

"All business income, *other than income from trans-*

---

[2] MCL 206.10(3); MSA 7.557(110)(3) provided:

" 'Financial organization' means a bank, national banking association, industrial bank, trust company, savings and loan association, savings and loan holding company as defined in section 1730a, chapter 13, title 12 of the laws of the United States which pursuant to that section controls a savings and loan subsidiary located in this state, incorporated bank holding company as defined in section 1841, chapter 17, title 12 of the laws of the United States which pursuant to that section controls a bank, national banking association, trust company, or industrial bank subsidiary located in this state, credit union, safety and collateral deposit company, regulated investment company as defined in section 851 and the following sections of the internal revenue code, under whatever authority organized, and any other association, joint stock company or corporation at least 90% of whose assets consist of intangible personal property and at least 90% of whose gross income consists of dividends or interest or other charges resulting from the use of money or credit."

*portation services, domestic insurers and financial orga-nizations,* shall be apportioned to this state by multiply-ing the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3." (Emphasis added.)

Since § 115 does not apply to income of a "finan-cial organization", respondent's argument that this provision is applicable here is clearly lacking in merit.

The Tax Tribunal found that petitioner properly utilized MCL 206.103 and 206.105; MSA 7.557(1103) and 7.557(1105)—provisions dealing with allocation and apportionment where, as here, petitioner's income was attributable to activities in Michigan and London—in conjunction with MCL 206.151; MSA 7.557(1151), dealing with taxable income of a financial organization. We agree. Con-trary to the testimony of witness Gould, petitioner could not use § 102, MCL 206.102; MSA 7.557(1102), because that section dealt solely with "taxable income of a taxpayer whose income-pro-ducing activities are confined solely to this state". The existence of petitioner's London office required it to begin with §§ 103 and 105. These sections stated as follows:

"Sec 103. Any taxpayer having income from business activity which is taxable both within and without this state, other than the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in this act." MCL 206.103; MSA 7.557(1103).

"Sec 105. For purposes of allocation and apportion-ment of income from business activity under this act, a taxpayer is taxable in another state if (a) in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privi-lege of doing business or a corporate stock tax, or (b)

that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not." MCL 206.105; MSA 7.557(1105).

Section 71(1) of the Income Tax Act of 1967 imposed a 9.7% income tax on petitioner as follows:

"(1) There is levied and imposed upon every financial institution a tax measured by 9.7% of taxable income as defined in section 34 subject to the applicable source and attribution rules contained in this act." MCL 206.71(1); MSA 7.557(171)(1), as amended by 1972 PA 181.

This section was applicable because petitioner, in addition to being a "financial organization" under MCL 206.10(3), was also a "financial institution" as defined in MCL 206.10(2); MSA 7.557(110)(2).[3] Taxable income of a financial institution was governed by § 34 of the act, which stated in pertinent part:

"(1) 'Taxable income' in the case of a financial institution means federal taxable income subject to the following adjustments:

\* \* \*

"(g) Any adjustments resulting from the allocation and apportionment provisions of chapter 3." MCL 206.34; MSA 7.557(134), as amended by 1970 PA 140.

The allocation and apportionment provisions of

---

[3] MCL 206.10(2); MSA 7.557(110)(2) provided:

"(2) 'Financial institution' means a bank, national banking association, trust company, savings and loan association, savings and loan holding company as defined in section 1730a, chapter 13, title 12 of the laws of the United States which pursuant to that section controls a savings and loan subsidiary located in this state, industrial bank or incorporated bank holding company as defined in section 1841, chapter 17, title 12 of the laws of the United States which pursuant to that section controls a bank, national banking association, trust company, or industrial bank susidiary located in this state."

chapter 3, referred to in § 34, included §§ 103 and 105, quoted above, and also § 151, the provision specifically applicable to financial organizations. During the tax years 1974 and 1975 this section provided in pertinent part:

"Sec 151. The taxable income of a financial organization attributable to Michigan sources shall be taken to be:

\* \* \*

"(b) In the case of taxable income of a taxpayer who conducts income-producing activities as a financial organization partially within and partially without this state, that portion of its net income as its gross business in this state is to its gross business everywhere during the period covered by its return, which portion shall be determined as the sum of:
"(i) Fees, commissions or other compensation for financial services rendered within this state;

\* \* \*

"(v) Any other gross income resulting from the operation as a financial organization within this state, divided by the aggregate amount of such items of the taxpayer everywhere." MCL 206.151; MSA 7.557(1151).

Further, § 195 of the act stated that if the allocation and apportionment provisions did not fairly represent the extent of the taxpayer's business activity in this state, the commissioner could approve an alternative method or require the use of different factors than those specified in the act. MCL 206.195; MSA 7.557(1195). See *Donovan Construction Co v Dep't of Treasury,* 126 Mich App 11; 337 NW2d 297 (1983), *lv den* 419 Mich 894 (1984). In the present case, the commissioner did not approve any alternate method, and respondent has made no claim that it was acting under § 195. Therefore, the attribution of petitioner's income must be determined under the other sections of the act.

Section 115 of the act, MCL 206.115, provided the usual method for apportioning business income. However, § 115 excepted the income of a financial organization from its provisions. Section 151, MCL 206.151, then set forth the only rule for attribution of the taxable income of a financial organization. Thus, even though all of a financial organization's income would be business income, the apportionment formula of § 115 would not control. Sections 115 and 151 are mutually exclusive provisions. The only possible way that a financial organization's income might be apportionable under § 115 would be if it conducted activity in some capacity other than as a financial organization. This it is not legally permitted to do. Here, the great weight of the evidence clearly indicated that petitioner's participation in the subject leveraged-lease transaction was undertaken in the normal, regular course of its banking business. Thus, § 151 is the applicable provision to determine the proper attribution of petitioner's taxable income.

In applying § 151, we note that there was no evidence of any fees, commissions or other compensation for financial services rendered in Utah. Nor was there any evidence of gross income resulting from the petitioner's operation as a financial organization in Utah. Rather, the bank's activities of considering, studying and arranging participation in the leveraged-lease transaction took place in Michigan. In addition, the evidence indicated that petitioner had engaged in a number of transactions in which customers and property were located in different states, and that the banking activity in those transactions was considered to have taken place within Michigan. Thus, the business due to petitioner's London branch was the only business conducted elsewhere than in this

state. The apportionment percentages applied in petitioner's tax returns were proper.

Respondent argues that *Grunewald, supra,* requires a different result. We do not agree. We find, as did the Tax Tribunal, that *Grunewald* is clearly distinguishable. In *Grunewald* two Michigan attorneys purchased shares in a limited partnership organized in Pennsylvania to acquire and operate an apartment project in that state. The project sustained losses, and the taxpayers deducted their distributive shares in determining adjusted gross income on their federal returns. In computing taxable income on their Michigan returns, the taxpayers carried over the federal figures without adjusting for the limited partnership losses. The Department of Treasury claimed that such losses were attributable to Pennsylvania and could not be used to reduce income subject to Michigan tax. The Board of Tax Appeals and the Court of Claims agreed.

On appeal the Court of Appeals affirmed in *Grunewald,* finding that the limited partnership income was income from business activity taxable both within and without this state. MCL 206.103. The Court noted that Pennsylvania had jurisdiction to tax the limited partnership income earned in that state. MCL 206.105; *Shaffer v Carter,* 252 US 37; 40 S Ct 221; 64 L Ed 445 (1920).[4] Then, applying § 115 of the act, MCL 206.115, the *Grunewald* panel found that the property, payroll and sales factors were all zero. Thus, none of the taxpayers' income from the limited partnership was attributable to Michigan.

---

[4] In the case at bar, Utah could not have taxed the income from the partnership trusts. During the tax years at issue, a federal law declared a moratorium on imposing any tax measured by income, receipts, or any other "doing business" tax by any state other than that in which a federally insured depository had its principal office, PL 93-100; 87 Stat 347; 12 USC 548. This moratorium precluded Utah from taxing petitioner, a Michigan-domiciled bank.

Respondent argues that *Grunewald* is identical to this case and requires us to reverse the Tax Tribunal's decision. We cannot agree. *Grunewald* is different from this case in several respects. First, MCL 206.115, the section relied on in *Grunewald,* applied to the income of individuals, but not to the income of a financial organization. Here, the taxpayer bank was required to use § 151, MCL 206.151. Second, *Grunewald* involved individual taxpayers who were taxable under a different tax rate and a different section of the act. Third, the federal moratorium of PL 93-100 was not a factor in *Grunewald,* where the Court specifically pointed out that Pennsylvania could tax the partnership's income. Finally, in *Grunewald,* the individual taxpayers were unquestionably engaged in two separate business activities—their law practice in Michigan and their apartment project in Pennsylvania. In the present case, the evidence showed that petitioner's activities in the leveraged-lease transaction were a part of petitioner's regular banking business. The existence of the partnership trusts as separate legal entities was not relevant in determining petitioner's taxable income.

Respondent's argument that *Grunewald* applies depends on a view of the partnership trusts as *taxpayers.* At the hearing, witness Lynch saw the partnership trusts as separate "persons" and "taxpayers". However, under the Income Tax Act of 1967, partnerships were not taxed as business entites. See MCL 206.16, 206.26; MSA 7.557(116), 7.557(126). Compare § 6(1) of the Single Business Tax Act which expressly includes partnerships in the definition of "person". MCL 208.6(1); MSA 7.558(6)(1). In the instant case it is the petitioner bank which is the "taxpayer"—not the partnership trusts in which petitioner participated.

Further, in response to respondent's argument

that a taxpayer "is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice",[5] we note that petitioner specifically conditioned its participation in the transaction on obtaining a ruling from the IRS indicating that the tax consequences would be favorable. Section 2(3) of the Income Tax Act of 1967 stated, "It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act". MCL 206.2(3); MSA 7.557(102)(3). Thus, petitioner had no reason to expect that respondent would require a different treatment of petitioner's partnership losses for state tax purposes.

Finally, it appears that the department's position was at odds with the opinion of the department's hearing referee who presided at the informal conference on June 20, 1979. The hearing referee concluded his summary of the conference as follows, with reference to a then-pending case which was later settled:

"Although I personally find that the taxpayer's arguments, both to the matter at hand and the OLD KENT FINANCIAL matter, are more persuasive and more properly founded on sound doctrines of statutory construction, I must recommend that the above intent [to assess issued June 10, 1978] be finalized without adjustment of the tax because the matter at hand is so factually identical to the OLD KENT FINANCIAL matter * * *. Taxpayers who present identical facts and raise identical questions of law must be treated uniformly and with consistency."

Here we find that the Tax Tribunal properly

---

[5] *Comm'r of Internal Revenue v National Alfalfa Dehydrating & Milling Co,* 417 US 134, 149; 94 S Ct 2129; 40 L Ed 2d 717 (1974).

analyzed the provisions of the income tax act, made findings of fact which were supported by the evidence and correctly rejected the arguments made by the respondent. Hence we must affirm the Tax Tribunal's decision.

Affirmed.